# United States Court of Appeals
### *for the*
# First Circuit

---

Case No. 24-1697

KURT STOKINGER; JANELLA STOKINGER,

*Plaintiffs-Appellants,*

v.

ARMSLIST, LLC,

*Defendant-Appellee.*

---

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW HAMPSHIRE, CONCORD, IN CASE NO. 1:23-CV-00428-PB,
PAUL J. BARBADAORO, U.S. DISTRICT JUDGE

## BRIEF FOR PLAINTIFFS-APPELLANTS

DOUGLAS N. LETTER
BRADY UNITED AGAINST GUN VIOLENCE
840 First Street NE, Suite 400
Washington, DC 20002
(202) 370-8100

JOHN D. KIMBALL
ROBYN L. MICHAELSON
REENA JAIN
ALEXANDER D. NEWMAN
BLANK ROME LLP
1271 Avenue of the Americas
New York, New York 10020
(212) 885-5000

MARK D. MORRISSETTE
BRIAN J. STANKIEWICZ
MCDOWELL & MORRISSETTE PA
P.O. Box 3360
282 River Road
Manchester, New Hampshire 03105
(603) 623-9300

*Attorneys for Plaintiffs-Appellants*

CP COUNSEL PRESS    (800) 4-APPEAL • (332487)

# <u>TABLE OF CONTENTS</u>

Table of Contents ........................................................................... i

Reasons Why Oral Argument Should Be Heard ..................................... vii

Jurisdictional Statement ..................................................................1

Statement of the Issues....................................................................1

Statement of the Case.....................................................................2

   I.   The Shooting of Officer Stokinger ................................................2

   II.   The Armslist Business and Website ...............................................5

   III.    Procedural History...................................................................7

Summary of the Argument...............................................................8

Argument....................................................................................9

   I.   Standard of Review.................................................................11

   II.   The Stokingers Satisfied The Requirements Of Personal Jurisdiction .........12

     A.  Armslist Purposefully Availed Itself of New Hampshire's Protections and Could Reasonably Anticipate Being Haled Into a Court in That State .....14

     B.  The Stokingers' Claims Relate to Armslist's Contacts with New Hampshire and Are Consistent With Principles of Justice and Fair Play.........22

   III.    In the Alternative, This Court Should Reverse The Denial Of Jurisdictional Discovery ..............................................................25

     A.  Jurisdictional Discovery is Warranted, Particularly Where the Facts Relevant to Personal Jurisdiction Are Solely Within the Possession of Armslist ..............................................................................26

     B.  Jurisdictional Discovery Should Not Be Denied on Procedural Grounds ..............................................................................31

Conclusion ..............................................................................34

Certificate of Compliance With Type-Volume Limit, Typeface Requirements, and Type-Style Requirements......................................................36

i

Certificate of Service ...............................................................................37

Addendum.................................................................................................38

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*A Corp. v. All American Plumbing, Inc.*,
    812 F.3d 54 (1st Cir. 2016)..............................................................18

*Alacron, Inc. v. Swanson*,
    145 N.H. 625 (2000)......................................................................24

*Baskin-Robbins Franchising LLC v. Alpenrose Dairy, Inc.*,
    825 F.3d 28 (1st Cir. 2016)...........................................12, 13, 14, 24

*be2 LLC v. Ivanov*,
    642 F.3d 555 (7th Cir. 2011) .........................................................16

*Blair v. City of Worcester*,
    522 F.3d 105 (1st Cir. 2008)..........................................................26

*Bluetarp Fin., Inc. v. Matrix Const. Co.*,
    709 F.3d 72 (1st Cir. 2013).................................................11, 23, 24

*Boit v. Gar-Tec Prod., Inc.*,
    967 F.2d 671 (1st Cir. 1992).....................................................28, 29

*Burger King Corp. v. Rudzewicz*,
    471 U.S. 462 (1985).......................................................................13

*C.W. Downer & Co. v. Bioriginal Food & Sci. Corp.*,
    771 F.3d 59 (1st Cir. 2014)...............................................12, 14, 23

*Chen v. United States Sports Acad., Inc.*,
    956 F.3d 45 (1st Cir. 2020)..............................................18, 19, 27

*Curry v. Revolution Labs., LLC*,
    949 F.3d 385 (7th Cir. 2020) ..............................................11, 21

*Fidrych v. Marriott Int'l, Inc.*,
    952 F.3d 124 (4th Cir. 2020) .........................................................20

iii

*Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*,
    592 U.S. 351 (2021) ..................................................................22

*Gather, Inc. v. Gatheroo, LLC*,
    443 F. Supp. 2d 108 (D. Mass. 2006) ........................................16

*Gray v. St. Martin's Press, Inc.*,
    929 F. Supp. 40 (D.N.H. 1996) ..................................................13

*International Shoe Co. v. Washington*,
    326 U.S. 310 (1945) ..................................................................22

*K.B. v. Inter-Cont'l Hotels Corp.*,
    No. 19-CV-1213-AJ, 2020 WL 8674188 (D.N.H. Sept. 28, 2020) ....................32

*Keeton v. Hustler Mag., Inc.*,
    465 U.S. 770 (1984) ............................................................11, 16

*Knox v. MetalForming, Inc.*,
    914 F.3d 685 (1st Cir. 2019) ......................................................15

*Lang Van, Inc. v. VNG Corp.*,
    40 F.4th 1034 (9th Cir. 2022), *cert. denied*, 143 S. Ct. 2563 (2023) ................17

*Mavrix Photo, Inc. v. Brand Techs., Inc.*,
    647 F.3d 1218 (9th Cir. 2011) ....................................................20

*Motus, LLC v. CarData Consultants, Inc.*,
    23 F.4th 115 (1st Cir. 2022) ..........................................12, 18, 31

*N. Laminate Sales, Inc. v. Davis*,
    403 F.3d 14 (1st Cir. 2005) ....................................................13, 22

*Nandjou v. Marriott Int'l, Inc.*,
    985 F.3d 135 (1st Cir. 2021) ......................................................22

*NexLearn, LLC v. Allen Interactions*
    859 F. 3d 1371 (Fed. Cir. 2017) ................................................19

*Nowak v. Tak How Invs., Ltd.*,
    94 F.3d 708 (1st Cir. 1996) ............................................22, 23, 24

iv

*O'Neil v. Somatics, LLC*,
  No. 20-CV-175-PB, 2020 WL 7043559 (D.N.H. Dec. 1, 2020).......................32

*Orion Seafood Int'l, Inc. v. Supreme Grp. B.V.*,
  No. 11-CV-562-SM, 2012 WL 3776919 (D.N.H. Aug. 29, 2012) ...................32

*Plixer Int'l, Inc. v. Scrutinizer GmbH*,
  905 F.3d 1 (1st Cir. 2018).............................................................................*passim*

*PREP Tours, Inc. v. Am. Youth Soccer Org.*,
  913 F.3d 11 (1st Cir. 2019).................................................................................15

*Rice v. Electrolux Home Prod., Inc.*,
  No. 4:15-CV-00371, 2020 WL 247284 (M.D. Pa. Jan. 15, 2020) ....................30

*Rosenthal v. Bloomingdales.com, LLC*,
  101 F.4th 90 (1st Cir. 2024)....................................................................10, 15, 18

*Surpitski v. Hughes-Keenan Corp.*,
  362 F.2d 254 (1st Cir. 1966)...............................................................................28

*Ticked Off, Inc. v. TickCheck, LLC*,
  No. 19-CV-627-AJ, 2019 WL 5295148 (D.N.H. Oct. 17, 2019).......................32

*UMG Recordings, Inc. v. Kurbanov*,
  963 F.3d 344 (4th Cir. 2020) ..............................................................................21

*United States v. Swiss Am. Bank, Ltd.*,
  191 F.3d 30 (1st Cir. 1999).............................................................................17, 31

*United States v. Swiss Am. Bank, Ltd.*,
  274 F.3d 610 (1st Cir. 2001)...............................................................................26

*Univ. of Massachusetts v. L'Oréal S.A.*,
  36 F.4th 1374 (Fed. Cir. 2022) ..........................................................................29

*Zippo Mfg. Co. v. Zippo Dot Com, Inc.*,
  952 F. Supp. 1119 (W.D. Pa. 1997).............................................................11, 16

**Statutes**

28 U.S.C. § 1291 ....................................................................................................1

v

28 U.S.C. § 1332(a) ................................................................................ 1

N.H. Rev. Stat. Ann. § 510:4 ................................................................. 12

**Other Authorities**

5B Charles Alan Wright & Arthur R. Miller, Federal Practice and
    Procedure § 1351 (4th ed.) ............................................................... 28

Fed. R. Civ. P.
    4(k)(2) ............................................................................................. 17
    7(b) ................................................................................................. 33
    12(b) ........................................................................................... 8, 28
    26(d) ............................................................................................... 31

## <u>REASONS WHY ORAL ARGUMENT SHOULD BE HEARD</u>

Pursuant to Local Rule 34, Plaintiffs-Appellants Kurt Stokinger and Janella Stokinger (the "Stokingers") respectfully request oral argument. The Stokingers believe oral argument will assist this Court, particularly because the question of whether publishing a website that facilitates the sale of guns in the district constitutes "purposeful availment" that subjects the provider to personal jurisdiction is a rapidly developing area of law without clear precedent from the Supreme Court or this Circuit.

## JURISDICTIONAL STATEMENT

The district court had subject-matter jurisdiction pursuant to 28 U.S.C. § 1332(a) because the matter in controversy exceeds $75,000, exclusive of interest and costs, and the parties are citizens of different States.

This Court has jurisdiction pursuant to 28 U.S.C. § 1291 because this appeal is from a final judgment disposing of all parties' claims. The district court entered a final judgment on July 15, 2024, and the Stokingers timely filed a notice of appeal on July 29, 2024. (JA489).

## STATEMENT OF THE ISSUES

1.     Whether the district court erred in holding that it lacked personal jurisdiction over Defendant-Appellee Armslist, LLC ("Armslist"), even though the company's website was used to facilitate the sale in New Hampshire of the firearm that was used to shoot and critically injure Plaintiff-Appellant Officer Kurt Stokinger, and the website listed thousands of firearms for sale within New Hampshire, allowed its users to narrow their search to listings in New Hampshire, and generated advertising revenue from New Hampshire.

2.     In the alternative, whether the district court erred in denying jurisdictional discovery, where the request sought information about Armslist's contacts with New Hampshire, which is solely within Armslist's possession, and

where the request was timely, did not prejudice Armslist, and was responded to on the merits by Armslist.

## STATEMENT OF THE CASE

The Stokingers brought this action against Armslist, asserting claims of negligence, aiding and abetting tortious and illegal conduct, public nuisance, loss of spousal consortium, and loss of support. The complaint alleges that Armslist's website facilitated the straw purchase in New Hampshire of a firearm, which was then illegally sold to a convicted felon who used the firearm to shoot and critically injure Kurt Stokinger ("Officer Stokinger"), a then-active-duty City of Boston police officer. (*See generally* JA10).

This appeal addresses whether the district court should have exercised personal jurisdiction over Armslist based on the company's contacts with the State of New Hampshire. In the alternative, this appeal also addresses whether the district court, rather than dismissing this case, should have allowed jurisdictional discovery in connection with Armslist's contacts with New Hampshire so that the court would have had a complete record before it to consider the issue of personal jurisdiction.

## I.     THE SHOOTING OF OFFICER STOKINGER

Officer Stokinger is a former police officer with the Boston Police Department. The complaint alleges that on January 8, 2016, Officer Stokinger was shot five times in the line of duty by a man named Grant Headley. (JA12 ¶ 19). The

.40 caliber Glock Model 27 semi-automatic handgun (the "Armslist Gun") used to shoot Officer Stokinger was sold to a straw purchaser through a listing on Armslist.com, a website owned and operated by Armslist. (JA12–JA13 ¶¶ 19, 23–24). (A "straw purchaser" is an individual who illegally buys a gun for somebody else when that second person would be barred by law from making the purchase himself; a straw purchase will often involve somebody buying a gun for a person who is underage, or has a felony conviction, or has been institutionalized for serious psychological or emotional difficulties.)

Officer Stokinger suffered severe injuries from this armed assault and his career as a police officer was abruptly and permanently cut short. (JA13 ¶ 20; JA42 ¶ 239; JA44 ¶ 249). Headley, who was on probation at the time of the shooting, was legally prohibited from possessing a firearm, but was able to do so due to the lack of controls over firearm sales on the Armslist website. (JA12–JA13 ¶¶ 19, 26–27).

The Armslist Gun that Headley used to shoot Officer Stokinger was bought and sold multiple times. As relevant here, Black Op Arms in Claremont, New Hampshire, a federally licensed firearms dealer, sold it to Derek McNamara in March 2015. (JA37 ¶ 203). McNamara then listed this gun for sale on Armslist's website. (JA37–JA38 ¶¶ 197, 204). He was contacted by Sara Johnson, a New Hampshire resident, straw purchaser, and gun trafficker who saw the online listing. (JA13 ¶ 23; JA38 ¶ 204). McNamara and Johnson met at a McDonald's restaurant

3

in Warner, New Hampshire in July 2016, where Johnson purchased the Armslist Gun from McNamara. (JA13 ¶ 24; JA38 ¶ 205). Johnson then gave the Armslist Gun to her common-law husband, Daniel Sullivan, who sold it to Headley, who not long thereafter used it to shoot Officer Stokinger in nearby Boston. (JA13 ¶ 25; JA38 ¶ 213). Johnson was subsequently charged with and pleaded guilty to various firearms sales offenses. (JA38 ¶¶ 209–10; JA40 ¶ 224; JA379–JA393).

This purchase by Johnson was not a one-off situation. To the contrary, an ATF special agent stated in a 2016 affidavit that Johnson had contacted at least 186 potential firearm sellers through various websites, including Armslist, and acquired dozens of firearms through private sales despite her lack of a firearm license. (JA306). The ATF affidavit identified numerous firearms purchased by Johnson in New Hampshire, including approximately 20 she purchased via the Armslist website or through contacts obtained through that website. (JA307–JA320).

The complaint alleges that Johnson used New Hampshire as a place where she carried out her gun trafficking activities utilizing Armslist's services. And the gun in this case that was used to shoot Officer Stokinger had been sold to Johnson in New Hampshire; Johnson later gave the gun purchased in New Hampshire to her husband, who next sold it to Headley. (JA13 ¶¶ 21–25; JA38 ¶¶ 204–13).

## II.     THE ARMSLIST BUSINESS AND WEBSITE

Armslist.com is a for-profit online firearms marketplace—similar to Craigslist—which enables individuals to privately purchase and sell firearms and firearm-related accessories. (JA11 ¶ 8; JA17 ¶ 60; JA46 ¶ 262).

Armslist is directly funded through paid third-party advertisements on Armslist.com and through its premium vendor subscription service. (JA18 ¶ 62). "Premium Vendors" pay $300 annually or $30 per month, while "Premium Personal" users pay $3.99 or $6.99 per month for certain benefits. (JA215; JA237). Armslist admits that it "recruited Premium Vendors in a number of different ways, including through the use of email lists purchased from independent third parties, over the phone, and in person …," although Armslist did not specify whether any of those recruiting efforts were directed at customers in New Hampshire. (JA92 ¶ 35).

An examination of Armslist.com listings by the New York Times in 2013 revealed that 94% of the firearms offered for sale on the website were posted by private sellers who, unlike licensed dealers, are not required by law in New Hampshire to conduct background checks on purchasers. (JA19 ¶ 74; JA249–JA257). According to Armslist, "Private Party" sellers can list firearms and accessories for sale on the Armslist website without registering or paying membership fees. (JA91 ¶ 20).

Thus, Armslist's revenue largely comes from advertising. And the more sales of firearms (regardless of legality), the more website traffic, and accordingly the more advertising revenue generated for Armslist. As of 2021, there was an average of 16,277 posts each year for firearms for sale in New Hampshire on the Armslist website for which no background check was legally required. (JA246–JA248). Armslist accordingly derives advertising revenue from website traffic from, *inter alia*, New Hampshire.

Moreover, Armslist specifically created search functionality on its website to allow its users to narrow their search to designated listings in New Hampshire. For example, there is a page on its website which displays listings of firearms for sale in New Hampshire. (JA89, JA231, JA245 ¶ 16). Even more narrowly, the Armslist website now provides a "City" dropdown menu allowing users to select from various cities in New Hampshire (*e.g.*, Concord, Keene, etc.). (JA231, JA245). Armslist thus allows visitors to browse and purchase firearms for sale in New Hampshire generally or in specific New Hampshire cities, and each firearm for sale is labeled with its geographic location (*e.g.*, "New Hampshire," "Concord," etc.). (JA231, JA245).

Instructions on the Armslist website make clear that "ARMSLIST was designed for local interactions, please use the site accordingly." (JA241). The website instructs its users to list firearms and accessories for sale where they are located and where the sale will take place: "You should create the listing in the

6

location where you and your item are physically located…. If someone finds it in their home location, they assume they can go to your location and make a deal." (JA241). The website tells users not to post in multiple locations or in "nearby cities" or "nearby states." (JA241) ("[T]his confuses people. If they want to look at an item in your location, they will browse your location …. Users look at listings in the cities where they live and shop."). This real-world interaction is touted as a feature; indeed, among the listed benefits of the Premium Vendor status are features designed both to "drive internet traffic" and also to "drive foot traffic through your front door." (JA237–JA238).

## III.   PROCEDURAL HISTORY

The Stokingers originally sued Armslist in the Commonwealth of Massachusetts, Suffolk County Superior Court (the "Massachusetts Action"). (JA11 ¶ 6, JA101–JA138). The Stokingers received limited jurisdictional discovery in the Massachusetts Action concerning Armslist's ties to Massachusetts. (JA402, 9:15–10:1; JA467–68). Because, *inter alia*, the gun was sold in New Hampshire, the Massachusetts Action was dismissed for lack of personal jurisdiction. (JA189) ("If anything, the record suggests that the plaintiffs' injuries derive from Armslist's business in New Hampshire."). In light of the Massachusetts court's ruling, the Stokingers accordingly filed suit in the U.S. District Court for the District of New Hampshire. (*See generally* JA10).

Armslist filed two motions to dismiss, one pursuant to Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction and the other pursuant to Rule 12(b)(6) for failure to state a claim. (JA6; JA58). The Stokingers opposed both motions, and in their opposition to the Rule 12(b)(2) motion, requested limited jurisdictional discovery on Armslist's contacts with New Hampshire. (JA7; JA202). The district court granted Armslist's Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction, denied the Stokingers' request for jurisdictional discovery, and denied the Rule 12(b)(6) motion as moot. ADD1–ADD25.[1] The Stokingers timely filed a notice of appeal from the district court's final judgment. (JA489).

## SUMMARY OF THE ARGUMENT

Armslist owns and operates a website "designed for local interactions" with the expectation that its users "look at listings in the cities where they live and shop" and "assume they can go to [the listing] location and make a deal." (JA241).

Each firearm or accessory listed for sale on the Armslist site is labeled with its geographic location. The website allows users to filter that location not only by state, including New Hampshire, but now by certain cities within states like New Hampshire. (JA25 ¶ 113, JA216, JA245). Further, Armslist generates advertising revenue based on visitors to its website, including those from New Hampshire.

---

[1] Citations to "ADD" refer to the Addendum annexed to this Brief.

(JA19 ¶ 73–76, JA63, JA70). The listings on its website, and viewers of those listings (which are "designed" to be "local"), generate advertising revenue for Armslist.

Given that Armslist.com lists firearms in New Hampshire, offers New Hampshire-specific search functions and generates advertising revenue from New Hampshire, it is eminently foreseeable that Armslist would be haled into a New Hampshire court (which is what the Massachusetts court pointed toward). And exercise of jurisdiction in this particular case is proper because the Armslist Gun that was used to shoot and critically injure Officer Stokinger was listed for sale and sold in New Hampshire.

To the extent this Court is not inclined to reverse the denial of the motion to dismiss outright, it should reverse the district court's denial of jurisdictional discovery so that the decision here can be based on a complete record. The limited discovery sought concerning Armslist's contacts with New Hampshire is relevant and solely within the control of Armslist. To the extent the denial of jurisdictional discovery was based on a purported procedural fault, that was harmless error given that the request for discovery was timely and there was no prejudice to Armslist.

## ARGUMENT

Armslist owns and operates a website "designed" to be "local" and allows users to purchase firearms and accessories wherever they live. Having targeted specific states, including New Hampshire, Armslist has sufficient ties to be subject

9

to personal jurisdiction in New Hampshire. Armslist's website has search features catering to New Hampshire residents and generates advertising revenue from New Hampshire. Indeed, Armslist.com averages over 16,000 listings per year for firearms for sale in New Hampshire, and the more sales of firearms in New Hampshire, the more website traffic from New Hampshire, and thus the more advertising revenue generated from New Hampshire. Having such ties to New Hampshire meets the "purposeful availment" standard and the exercise of personal jurisdiction over Armslist is proper.

To be clear, the Stokingers do not contend that website operators are subject to personal jurisdiction wherever the website is accessible. But Armslist goes beyond *just* hosting a website; it has designed Armslist.com to enable customers to sell or purchase weapons in specific states—and now even specific towns in New Hampshire—and derives advertising revenue there. Offering an average of over 16,000 firearms each year for sale in New Hampshire is a significant contact with the state. To find this is not "purposeful availment" artificially narrows jurisdiction, and risks allowing companies to take advantage of the benefits of New Hampshire's online commerce without the corresponding exposure, as at least one judge from this Court and other courts have recognized.[2] And a finding of personal jurisdiction here

---

[2] *See Rosenthal v. Bloomingdales.com, LLC*, 101 F.4th 90, 99 (1st Cir. 2024) (Thompson, J., concurring dubitante) ("I worry that the Bloomingdaleses of the world will be able to launch online platforms accessible in all fifty states yet still be

10

does not require this Court to make new law. Decades ago, the Supreme Court held that where "Respondent produces a national publication aimed at a nationwide audience[,] [t]here is no unfairness in calling it to answer for the contents of that publication wherever a substantial number of copies are regularly sold and distributed." *Keeton v. Hustler Mag., Inc.*, 465 U.S. 770, 781 (1984). The Supreme Court's reasoning in *Keeton* applies equally to a website as to a magazine.

Thus, given its New Hampshire ties and the relationship between such ties and the claims at issue, the exercise of personal jurisdiction over Armslist is proper here. Alternatively, to the extent this Court is not inclined to reverse the dismissal for lack of personal jurisdiction, it should reverse the denial of jurisdictional discovery to allow for a determination on a complete record.

## I.     STANDARD OF REVIEW

When a district court considers a motion to dismiss under the prima facie standard, as it did here (*see* ADD8), this Court's review is *de novo*. *Bluetarp Fin., Inc. v. Matrix Const. Co.*, 709 F.3d 72, 79 (1st Cir. 2013). When reviewing the facts,

---

held not to have sufficient contacts in any of them to trigger personal jurisdiction"); *accord Curry v. Revolution Labs., LLC*, 949 F.3d 385, 402 (7th Cir. 2020) ("[defendant] wants to have its cake and eat it, too: it wants the benefit of a nationwide business model with none of the exposure." (citation and quotation omitted)); *Zippo Mfg. Co. v. Zippo Dot Com, Inc.*, 952 F. Supp. 1119, 1126 (W.D. Pa. 1997) ("If a corporation determines that the risk of being subject to personal jurisdiction in a particular forum is too great, it can choose to sever its connection to the state.").

this Court is to "take the plaintiff's evidentiary proffers as true and construe them in the light most favorable to the plaintiff's claim …." *C.W. Downer & Co. v. Bioriginal Food & Sci. Corp.*, 771 F.3d 59, 65 (1st Cir. 2014); *accord Baskin-Robbins Franchising LLC v. Alpenrose Dairy, Inc.*, 825 F.3d 28, 34 (1st Cir. 2016). And this Court reviews decisions granting or denying jurisdictional discovery for abuse of discretion. *Motus, LLC v. CarData Consultants, Inc.*, 23 F.4th 115, 128 (1st Cir. 2022).

## II.    THE STOKINGERS SATISFIED THE REQUIREMENTS OF PERSONAL JURISDICTION

To establish specific personal jurisdiction[3] over Armslist, the Stokingers must satisfy the requirements of both the New Hampshire long-arm statute and the Due Process Clause of the federal Constitution.

New Hampshire's long-arm statute provides:

> Any person who is not an inhabitant of this state and who, in person or through an agent, transacts any business within this state, commits a tortious act within this state, or has the ownership, use, or possession of any real or personal property situated in this state submits himself, or his personal representative, to the jurisdiction of the courts of this state as to any cause of action arising from or growing out of the acts enumerated above.

N.H. Rev. Stat. Ann. § 510:4.

---

[3] General personal jurisdiction over Armslist is not at issue in this appeal.

"The New Hampshire Supreme Court has interpreted the New Hampshire long-arm statute as affording jurisdiction over foreign defendants 'to the full extent that the statutory language and due process will allow.'" *N. Laminate Sales, Inc. v. Davis*, 403 F.3d 14, 24 (1st Cir. 2005) (citation omitted). And, because New Hampshire's long-arm statute is coextensive with the outer limits of due process, this Court today need only determine whether the exercise of personal jurisdiction comports with federal constitutional standards. *See Gray v. St. Martin's Press, Inc.*, 929 F. Supp. 40, 44 (D.N.H. 1996). The constitutional analysis involves a three-part analysis:

> (1) whether the claim directly arise[s] out of, or relate[s] to, the defendant's forum state activities; (2) whether the defendant's in-state contacts represent a purposeful availment of the privilege of conducting activities in the forum state, thereby invoking the benefits and protections of that state's laws and making the defendant's involuntary presence before the state's courts foreseeable; and (3) whether the exercise of jurisdiction is reasonable.

*Baskin-Robbins*, 825 F.3d at 35 (cleaned up). However, the Supreme Court has long "reject[ed] any talismanic jurisdictional formulas," as "'the facts of each case must [always] be weighed' in determining whether personal jurisdiction would comport with 'fair play and substantial justice.'" *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 485–86 (1985) (citation omitted).[4]

---

[4] Although the parties dispute whether the personal jurisdiction analysis should be conducted as of the filing of this action, the district court did not decide this issue. ADD18 n.4. In any event, the Stokingers' public nuisance claim raises a continuing

13

A.    **Armslist Purposefully Availed Itself of New Hampshire's Protections and Could Reasonably Anticipate Being Haled Into a Court in That State**

"The purposeful availment inquiry asks whether a defendant has 'deliberately target[ed] its behavior toward the society or economy of a particular forum [such that] the forum should have the power to subject the defendant to judgment regarding that behavior.'" *Baskin-Robbins*, 825 F.3d at 36 (citation omitted). This "represents a rough quid pro quo: when a defendant deliberately targets its behavior toward the society or economy of a particular forum, the forum should have the power to subject the defendant to judgment regarding that behavior." *C.W. Downer*, 771 F.3d at 66 (citation and quotation omitted). "The cornerstones of this inquiry are voluntariness and foreseeability." *Id.*

While those general elements of the purposeful availment standard are well-established, their application to cases in the modern age is less settled. "The Supreme Court has not definitively answered how a defendant's online activities translate into contacts for purposes of the minimum contacts analysis," although it is clear that "Supreme Court precedent does not establish specific targeting of a forum as the only means of showing that the purposeful availment test has been met." *Plixer*, 905 F.3d at 7–9 (citing *J. McIntyre Mach., Ltd. v. Nicastro*, 564 U.S. 873 (2011)).

---

tort, which this Court found falls outside the "general rule" set forth in *Harlow*. *See Plixer Int'l, Inc. v. Scrutinizer GmbH*, 905 F.3d 1, 11 (1st Cir. 2018) (citing *Harlow v. Children's Hosp.*, 432 F.3d 50, 62 (1st Cir. 2005)).

14

This Court's prior opinions have noted that "mere availability" of a website in a forum is insufficient. *Id.* at 8 (collecting cases). After all, most websites are available worldwide. Something more is required,[5] but that "something more" or "plus factor" can take various forms. For example, in analogous contexts this Court has interpreted Supreme Court precedent to find that the "something more" may include "'advertising in the forum State.'" *Knox v. MetalForming, Inc.*, 914 F.3d 685, 692 (1st Cir. 2019) (quoting *Asahi Metal Indus. Co. v. Superior Ct. of California, Solano Cnty.*, 480 U.S. 102, 112 (1987)); *cf. PREP Tours, Inc. v. Am. Youth Soccer Org.*, 913 F.3d 11 (1st Cir. 2019) (small number of communications which were "preliminary and limited nature and quality" directed into forum is not sufficient basis to foresee being haled into court there).

Here, Armslist's website states that "ARMSLIST was designed for local interactions." (JA241). It instructs users that they are expected to list the real-world location of themselves and the firearms and other items for sale, and to be available at that location to sell the items. (*Id.*). It then allows users to filter and search for specific locations of items for sale, including limiting searches to New Hampshire and now specific cities within New Hampshire. (JA245). Further, Armslist generates

---

[5] *See also Rosenthal*, 101 F.4th at 96 ("In cases in which a defendant's website is the primary forum contact, we have noted that there may be 'plus' factors evincing a corporate defendant's deliberate attempt to serve the forum state, that is, factors indicating something over and above the defendant's mere awareness that its products were entering a given market in the stream of commerce." (cleaned up)).

advertising revenue from each New Hampshire website visitor, including but not limited to those creating, viewing, or purchasing the over 16,000 listings for unlicensed firearms alone which are posted from New Hampshire on average each year. (JA247–JA248). (The true number of New Hampshire website visitors generating advertising revenue is likely far higher, but the Stokingers cannot obtain that information without jurisdictional discovery.)

It is therefore more than "foreseeable" that Armslist would be haled into court in New Hampshire when its services were used by customers to complete an illegal gun sale in that state. *See Keeton*, 465 U.S. at 781 ("Where, as in this case, respondent [], has continuously and deliberately exploited the New Hampshire market, it must reasonably anticipate being haled into court there …."); *see also Gather, Inc. v. Gatheroo, LLC*, 443 F. Supp. 2d 108, 116 (D. Mass. 2006) (finding sufficient purposeful availment where website "users are directed to information about their specific state"); *Zippo Mfg. Co. v. Zippo Dot Com, Inc.*, 952 F. Supp. 1119, 1126 (W.D. Pa. 1997) (contacts with forum state were not merely "fortuitous" because website operator knew it had customers in that state).[6]

---

[6] *Cf. be2 LLC v. Ivanov*, 642 F.3d 555 (7th Cir. 2011) (finding insufficient purposeful availment where "just 20 persons who listed Illinois addresses had at some point" created profiles on the defendant's website, and those twenty individuals were the only ones listed in the website's directory with addresses in Illinois).

This Court's opinion in *Plixer*, which found purposeful availment based on a foreign defendant's website, is instructive. *Plixer*, 905 F.3d at 4.[7] The *Plixer* Court found it relevant that the defendant "can track where its customers are from," but failed to make any attempts to block users from the forum area from accessing the website (or even to "take the low-tech step of posting a disclaimer that its service is not intended for [forum area] users"). *Id.* at 8–9.

This Court found that this failure to block access from the forum area "provides an objective measure of [defendant's] intent to serve customers in the [forum] market and thereby profit." *Id.* at 9. Similarly, Armslist knows where items on its website are listed for sale—they are specifically labeled with their state and even city and can be filtered and searched by location (*see, e.g.*, (JA245))—and yet Armslist has not limited New Hampshire residents' access to the website. Instead, it has encouraged such access.

The *Plixer* Court also found that a "regular flow or regular course of sales" in the forum area was sufficient to find that the defendant purposefully availed itself of the forum, even though the record did not show what percentage of defendant's

---

[7] Although *Plixer* was analyzed pursuant to Federal Rule of Civil Procedure 4(k)(2), "[t]he due process analysis under Rule 4(k)(2) is nearly identical to the traditional personal jurisdiction analysis with one significant difference: rather than considering contacts between the . . . [defendants] and the forum state, we consider contacts with the nation as a whole." *Lang Van, Inc. v. VNG Corp.*, 40 F.4th 1034, 1041 (9th Cir. 2022) (citation and quotation omitted), *cert. denied*, 143 S. Ct. 2563 (2023); *see also United States v. Swiss Am. Bank, Ltd.*, 191 F.3d 30, 36 (1st Cir. 1999) (same).

17

business came from the forum. *Id.* at 10. Here, there are over 16,000 listings on Armslist per year in New Hampshire, on average, for sales for which no background check is legally required. (JA247–JA248). And here, the Armslist Gun that caused the injury at issue was sold within New Hampshire. (JA11 ¶ 5, JA13 ¶ 24).

This Court's previous decisions finding website-based contacts insufficient for purposeful availment are equally instructive in distinguishing the facts of this case. In *Rosenthal*, the argument for jurisdiction was limited to a website's technical feature collecting information from visitors regardless of location, and there were no specific ties to the forum state. 101 F.4th 90. In *A Corp.*, the defendant was an Arizona plumbing business and the plaintiff sought to establish personal jurisdiction in Massachusetts based on the defendant's website which "does not mention Massachusetts." *A Corp. v. All American Plumbing, Inc.*, 812 F.3d 54, 57 (1st Cir. 2016). And both *Motus* and *Chen* concerned purely online services in which there was no tie between the claims at issue and the forum state. *Motus*, 23 F.4th at 128; *Chen v. United States Sports Acad., Inc.*, 956 F.3d 45 (1st Cir. 2020). The claims at issue here are directly tied to New Hampshire through the in-state sale of the Armslist Gun, and the listing for the Armslist Gun was one of thousands that are posted to Armslist.com each year.

### i.    *The New Hampshire-Specific Filtering Feature Demonstrates Armslist's Ties to New Hampshire*

Armslist's drop-down menu, which serves as a geographic filtering feature, demonstrates that the company is knowingly and intentionally targeting New Hampshire residents, particularly when paired with its instructions that items are to be for sale locally. This is demonstrably different from a website that allows a visitor to choose from all 50 states when inputting a place of residence or a billing address, including because the New Hampshire cities listed here were deliberately and manually created—not just part of a 50-state menu.

Critically, the injuries at issue in this litigation specifically relate to and arise from the listing on the Armslist website of a firearm sold in New Hampshire. (*See* Section II.B, *infra*.). While other courts have found personal jurisdiction lacking in cases involving similar drop-down menus or filtering features, in those cases, the state selected had no relationship to the claims at issue. In *NexLearn, LLC v. Allen Interactions*, the court held that the ability "to select 'Kansas' from a dropdown menu in the billing-address section when ordering" from the website did not satisfy the "relatedness" test because "[w]hile a Kansas resident *could* purchase [products] from [defendant's] website, what is missing is any evidence that such a sale has taken place." 859 F.3d 1371, 1377–78 (Fed. Cir. 2017). In this action, by contrast, there is no doubt that a sale of the weapon used to wound Officer Stokinger took place in New Hampshire, and it directly relates to the injuries at issue.

19

Similarly, in a case against the Marriott hotel chain, the Fourth Circuit found that a website feature "list[ing] South Carolina, along with every other state in the country and every other country in the world," which "allows guests to use a drop-down menu to select the place of their residence" when booking does not confer personal jurisdiction in South Carolina. *Fidrych v. Marriott Int'l, Inc.*, 952 F.3d 124, 129 (4th Cir. 2020). But there, the only tie to South Carolina was as the plaintiff's state of residence; the claims stemmed from a personal injury sustained at a Marriott-affiliated hotel located in Milan, Italy, and there was no other tie to South Carolina. *Id.* at 129, 140.

### ii. *Armslist Generates Advertising Revenue from New Hampshire Website Visitors*

Armslist's website also displays third-party advertisements to its customers. As the district court noted at oral argument: "advertising revenue is driven, like all these websites, with clicks. And so one of the ways in which they promote clicks is they allow people at no cost to list guns for sale on the website." (JA404 at 11:18–21). "[T]he more visitors there are to the site, the more hits that are made on the advertisements; the more hits that are made on the advertisements, the more money that is paid by the advertisers to [Armslist]." *Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1230–31 (9th Cir. 2011) (finding the defendant website operator is subject to personal jurisdiction despite "national viewership and scope" because

20

it "appeals to, and profits from, an audience in a particular state").[8] This, particularly when paired with the New Hampshire ties noted above, renders it "foreseeable" that Armslist will be haled into a New Hampshire court.

Armslist submitted to the district court an affidavit stating: "To the best of my knowledge, none of the Third Party Advertisers in January 2016 were located in New Hampshire." (JA93 ¶ 50). This is a red herring. Aside from being limited to a single month, the issue here is the Armslist website *visitors* located in New Hampshire, as it is the visitors who generate the advertising revenue. In any event, the Stokingers are entitled to test the individual affiant's knowledge, and what information Armslist itself possesses regarding the physical location of its third-party advertisers and other sources of revenue. These facts need to be clarified in discovery.

---

[8] *See also Curry*, 949 F.3d at 399 ("[I]t is not persuasive to say that [defendant] did not exploit the Illinois market simply because its advertising was not especially aimed at that state. There is no per se requirement that the defendant especially target the forum in its business activity" (citation omitted)); *UMG Recordings, Inc. v. Kurbanov*, 963 F.3d 344, 353 (4th Cir. 2020) ("Here, the visitors' acts of accessing the Websites … are themselves commercial relationships because [defendant] has made a calculated business choice not to directly charge visitors in order to lure them to his Websites" where defendant profits from advertising revenue).

**B.    The Stokingers' Claims Relate to Armslist's Contacts with New Hampshire and Are Consistent With Principles of Justice and Fair Play**

Although the district court's analysis focused on the purposeful availment prong of the due process analysis, the Stokingers satisfied the other two prongs, as well. The Stokingers' claims relate to and arise from Armslist's contacts with New Hampshire and are reasonable and consistent with principles of justice and fair play.

"What this Court calls the 'relatedness' test is one aspect of demonstrating minimum contacts pursuant to *International Shoe Co. v. Washington*, 326 U.S. 310 …." *Nowak v. Tak How Invs., Ltd.*, 94 F.3d 708, 713 (1st Cir. 1996). "[T]he relatedness test is a 'flexible, relaxed standard'" and does not require a defendant to "be physically present in the forum state to cause injury." *N. Laminate Sales*, 403 F.3d at 25 (citation omitted).[9] Here, the Stokingers' claims relate to Armslist's conduct within New Hampshire because Armslist facilitated the illegal sale of the Armslist Gun within the state, and that same gun was subsequently used to shoot Officer Stokinger, causing the injury giving rise to the Stokingers' claims.

---

[9] *See also Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 592 U.S. 351, 362 (2021) ("None of our precedents has suggested that only a strict causal relationship between the defendant's in-state activity and the litigation will do. As just noted, our most common formulation of the rule demands that the suit 'arise out of *or relate to* the defendant's contacts with the forum.'" (citation omitted)); *Nandjou v. Marriott Int'l, Inc.*, 985 F.3d 135, 149 (1st Cir. 2021) ("'strict adherence to a proximate cause standard in all circumstances is unnecessarily restrictive' and [] 'the first prong of the jurisdictional tripartite test is not as rigid' as the proximate cause inquiry in the tort context." (citation omitted)).

The Stokingers' claims are also "reasonable" and are consistent with principles of justice and fair play when analyzed under the "gestalt factors." *Bluetarp*, 709 F.3d at 83. Those factors are:

> (1) the defendant's burden of appearing [in the forum state], (2) the forum state's interest in adjudicating the dispute, (3) the plaintiff's interest in obtaining convenient and effective relief, (4) the judicial system's interest in obtaining the most effective resolution of the controversy, and (5) the common interests of all sovereigns in promoting substantive social policies.

*C.W. Downer*, 771 F.3d at 69 (citation omitted). "These factors typically 'play a larger role in cases' … 'where the minimum contacts question is very close.'" *Id.* (citation omitted).

Each factor either favors exercise of personal jurisdiction in New Hampshire or is, at most, neutral.

*First*, Armslist faces no special burden to litigate in New Hampshire compared to any other foreign defendant. *See Nowak*, 94 F.3d at 718 ("[Defendant] alleges nothing special or unusual about its situation beyond the ordinary cost and inconvenience of defending an action so far from its place of business…. [T]hat is not enough: it simply cannot be the case that every Hong Kong corporation is immune from suit in Massachusetts."); *accord Plixer*, 905 F.3d at 12 (defendant must show burdens are "special or unusual" and, in any event, "logistical challenges 'can be resolved through the use of affidavits and video devices.'" (citations and quotations omitted)).

23

*Second*, New Hampshire has a significant interest in adjudicating this dispute as a significant portion of the events—including crimes—giving rise to this litigation occurred in New Hampshire, and New Hampshire has already prosecuted one of the individuals involved for firearm-related offenses.[10] (JA302–JA340, JA379– JA393).

*Third*, "[this Court] [has] repeatedly said, 'a plaintiff's choice of forum must be accorded a degree of deference with respect to the issue of its own convenience.'" *Bluetarp*, 709 F.3d at 83 (cleaned up).

The *fourth* factor is "[u]sually … a wash," *Nowak*, 94 F.3d at 718, but here the relevant witnesses and evidence will be in New Hampshire and its neighboring state Massachusetts (where the Armslist Gun was used to shoot Officer Stokinger), rendering New Hampshire a more than efficient forum to resolve the litigation. *See also Alacron, Inc. v. Swanson*, 145 N.H. 625, 630 (2000) ("significant information relating to this action is located in New Hampshire, making New Hampshire an efficient forum in which to resolve this case").

*Fifth*, "[t]he final gestalt factor addresses the interests of the affected governments in substantive social policies," *Nowak*, 94 F.3d at 719, and thus favors the Stokingers as New Hampshire has a significant interest in this matter given that the sale of the firearm at issue took place within the state.

---

[10] The relevant analysis is only whether New Hampshire has any interest in adjudicating this dispute, not whether it has an "exclusive" or "greater" interest compared to that of other states. *Baskin-Robbins*, 825 F.3d at 38.

The Stokingers have therefore satisfied all three prongs of the due process analysis, and the district court can properly exercise personal jurisdiction over Armslist. This Court, therefore, should reverse the district court's decision granting the motion to dismiss for lack of personal jurisdiction.

## III.  IN THE ALTERNATIVE, THIS COURT SHOULD REVERSE THE DENIAL OF JURISDICTIONAL DISCOVERY

In the alternative, even if this Court is not inclined to find personal jurisdiction at this stage, it should reverse the denial of the Stokingers' request for jurisdictional discovery. The specific information the district court found lacking in its personal jurisdiction analysis—for example, the details of Armslist's New Hampshire-based listings and its contacts with New Hampshire advertisers and premium vendors—is solely within the possession or knowledge of Armslist. The Stokingers have no way to determine that information without jurisdictional discovery.

Narrow jurisdictional discovery is appropriate in this case in order to allow the trial court to analyze personal jurisdiction based on a complete record. And although we disagree with the court below that there were any procedural errors, to the extent there were any, they should be deemed harmless error given that the request was timely and there was no prejudice to Armslist.

### A.     Jurisdictional Discovery is Warranted, Particularly Where the Facts Relevant to Personal Jurisdiction Are Solely Within the Possession of Armslist

Although district courts have broad discretion in determining whether to grant jurisdictional discovery, "the threshold showing that a plaintiff must present to the district court to merit limited discovery is relatively low." *Blair v. City of Worcester*, 522 F.3d 105, 110–11 (1st Cir. 2008). And while the standard to reverse the district court's denial of jurisdictional discovery may be "high," *id.* at 111, such reversal is warranted here.

> Indeed, [this Court] may find an abuse of discretion even where the lower court's decision is "by no means wholly unsupported by the record." Thus, where a plaintiff can demonstrate the existence of a plausible factual disagreement or ambiguity, our jurisprudence favors permitting the litigants the opportunity to flesh out the record.

*Id.* (citation omitted); *see also United States v. Swiss Am. Bank, Ltd.*, 274 F.3d 610, 625 (1st Cir. 2001) ("We have long held that 'a diligent plaintiff who sues an out-of-state corporation and who makes out a colorable case for the existence of in personam jurisdiction may well be entitled to a modicum of jurisdictional discovery if the corporation interposes a jurisdictional defense.'" (citation omitted)).

The district court's stated reasons for finding lack of purposeful availment come down to lack of "evidence" or an incomplete "record," but the evidence referred to is solely within Armslist's possession and would require jurisdictional discovery to obtain. *See, e.g.*, ADD14 ("[T]here is no evidence that Armslist

26

advertised in New Hampshire or otherwise solicited New Hampshire residents to use its website."); ADD17 ("Nothing in the record indicates that Armslist engaged in regular communications with or otherwise attempted to foster an ongoing relationship with the New Hampshire vendors."). The district court also accepted Armslist's factual assertions as "undisputed," but the information required to dispute those assertions is solely within Armslist's possession.[11] *See, e.g.*, ADD15 ("the only evidence in the record is that Armslist 'did not actively recruit Premium Vendors in New Hampshire'"). And, as the Stokingers noted in their briefing (*see* ADD17), Armslist's affidavit setting forth certain "undisputed" facts was full of "carefully chosen phrases which leave room for interpretation," further necessitating discovery to probe these assertions. *See* (JA87–JA94) (containing qualifiers like "to the best of my knowledge" and "Armslist did not *actively* recruit" Premium Vendors or Private Parties in New Hampshire (emphasis added)).

This Court has regularly found jurisdictional discovery appropriate where relevant jurisdictional facts were solely within the defendant's control. For example,

---

[11] The district court cited the *Chen* ruling for the proposition that "facts proffered by the defendant may be treated as undisputed, even if challenged by the plaintiff, where the plaintiff fails to offer evidence to the contrary." ADD15 (citing *Chen*, 956 F.3d at 56). But in *Chen*, the court rejected plaintiff's argument that defendant's affidavit was "unchecked" due to lack of discovery because Chen did not request discovery nor object to the court's consideration of the affidavit and failed to "even mention the affidavit." *Chen*, 956 F.3d at 56. Here, Armslist's affidavit is similarly "unchecked," but the Stokingers *did* request discovery and argued that the affidavit was "self-serving," "outdated," and "leave[s] room for interpretation." (JA229).

in a case where plaintiffs "complain[ed] that only [defendant] knows the answer" to a key factual question, this Court noted that "[plaintiffs] understate their own ability and burden to create a record that supports their jurisdictional allegations. [They] could have requested that the court allow discovery on the limited issue of personal jurisdiction." *Boit v. Gar-Tec Prod., Inc.*, 967 F.2d 671, 680 (1st Cir. 1992). In fact, this Court held that "if the [plaintiffs] *had* requested that the district court defer ruling on [defendant's] motion pending further discovery, it might have been an abuse of discretion to deny the request." *Id.* at 681 (emphasis added).[12]

The Stokingers also identified for the district court the specific facts in Armslist's possession that they expected to uncover with the benefit of jurisdictional discovery. For example, at oral argument, the district court inquired whether the "state-based search feature" that allowed users to narrow gun listings to those in New Hampshire "was used in connection with this particular sale," a key question which would tie targeting of New Hampshire to the Stokingers' claims. (JA407–JA408 at 14:20–15:7). The Stokingers' counsel replied, "That's one of the things

---

[12] *See also Surpitski v. Hughes-Keenan Corp.*, 362 F.2d 254, 255 (1st Cir. 1966) ("A plaintiff who is a total stranger to a corporation should not be required, unless he has been undiligent, to try such an issue [of personal jurisdiction] on affidavits without the benefit of full discovery."); 5B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1351 (4th ed.) ("[I]t may be desirable to hold rendering a decision on a Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction in abeyance …. Deferring the ruling will enable the parties to employ discovery on the jurisdictional issue and might lead to a more accurate judgment on the subject than one made solely on the basis of affidavits.").

we'd like to find out from discovery." (JA408 at 15:8–10). Similarly, the Court inquired, "do we have data about how many New Hampshire firearm sellers had -- had listings on the site to sell weapons in the two years, the year of and the year prior?" (*Id.* at 17:14–18:4). The Stokingers' counsel replied, "It's certainly something we'd like to know … how much activity was there." (*Id.*).

Moreover, the request for jurisdictional discovery is not a "fishing expedition." Rather, the request stems from specific evidence of Armslist's conduct directed at, and transactions within, New Hampshire. The evidence available to the Stokingers (even without the benefit of jurisdictional discovery) and submitted to the district court showed that, as of 2021, there were an average of 16,277 posts in New Hampshire per year of firearms for sale on the Armslist website for which no background check was legally required.[13] (JA246–JA248). And while Armslist unilaterally put forth evidence purportedly minimizing its contacts with New Hampshire, there are notable gaps. For example, Armslist admitted that it "recruited Premium Vendors in a number of different ways, including through the use of email … over the phone, and in person," (JA92 ¶ 35), but conveniently did not address

---

[13] As the district court noted, an "impermissible 'fishing expedition based only upon bare allegations'" is not grounds for jurisdictional discovery. ADD25 (quoting *Univ. of Massachusetts v. L'Oréal S.A.*, 36 F.4th 1374, 1385 (Fed. Cir. 2022)). But the bar for permitting discovery is low; jurisdictional discovery "should be allowed" where "evidence raises the *possibility* that discovery might have uncovered the requisite contacts" unless based solely on "frivolous, bare allegations." *See L'Oréal*, 36 F.4th at 1385 (finding abuse of discretion in denying jurisdictional discovery).

whether those emails, phone calls, and in-person visits were directed at or occurred in New Hampshire. And most importantly, the specific firearm at issue in this proceeding—the Armslist Gun—was sold through Armslist in New Hampshire. (JA11 ¶ 5, JA13 ¶ 24).

Finally, although the Stokingers previously obtained jurisdictional discovery in the Massachusetts Action, such discovery was limited to Armslist's direct and indirect ties to Massachusetts. The Stokingers did not have the opportunity to conduct jurisdictional discovery focused on Armslist's comprehensive contacts with New Hampshire. That minimal information obtained through the Massachusetts-targeted discovery in the Massachusetts Action pertained to New Hampshire should not prevent the Stokingers from obtaining necessary jurisdictional discovery in this present action. Indeed, during oral argument the district court acknowledged that the previous discovery was "jurisdictional discovery in the Massachusetts action, to the extent it bore on Massachusetts." (JA402 at 9:15–23) (emphasis added).[14] And, in any event, there was no finding as to any New Hampshire-related information obtained in the Massachusetts Action and there was no finding that jurisdictional

---

[14] *Cf. Rice v. Electrolux Home Prod., Inc.*, No. 4:15-CV-00371, 2020 WL 247284, at *10 (M.D. Pa. Jan. 15, 2020) (denying plaintiffs further jurisdictional discovery for their amended complaint filed years after plaintiffs were initially allowed jurisdictional discovery in the same proceeding before the Middle District of Pennsylvania).

discovery in this proceeding would be duplicative of previous discovery efforts in the Massachusetts Action (which it would not be).[15]

The district court's erroneous denial of jurisdictional discovery in connection with Armslist's contacts with New Hampshire has resulted in substantial prejudice to the Stokingers, and thus the decision should be reversed.

### B. Jurisdictional Discovery Should Not Be Denied on Procedural Grounds

To the extent the district court's decision denying jurisdictional discovery was based on the Stokingers' purported failure to make the request in a separate, written motion, the Court should reverse this finding as harmless error. Although the "best way" to request jurisdictional discovery may be in a standalone motion, "district courts have a certain amount of leeway to treat informal requests for jurisdictional discovery made in opposition papers as if made by motion when there is no prejudice to the other party . . . ." *Motus*, 23 F.4th at 127–28; *accord Swiss Am. Bank*, 191 F.3d at 45 ("A timely and properly supported request for jurisdictional discovery merits

---

[15] Although the district court indicated that the Stokingers should have sought discovery prior to "first attempting to oppose the motion with an incomplete record," ADD23, the Stokingers were required to oppose the motion to dismiss once it was filed by Armslist. The district court also issued an order adjourning the pretrial conference and scheduling order "until after resolution of the pending Motions to Dismiss," (JA200), so there was no opportunity for discovery absent the jurisdictional discovery that the district court denied. *See also* Fed. R. Civ. P. 26(d).

solicitous attention."). Here, there was no prejudice to Armslist (nor did the district court make any finding of prejudice).

The Stokingers made their request for jurisdictional discovery in a timely manner, and Armslist substantively addressed the request without objecting on procedural grounds. (*See* JA290–JA292, JA297–JA298); *see, e.g.*, *Orion Seafood Int'l, Inc. v. Supreme Grp. B.V.*, No. 11-CV-562-SM, 2012 WL 3776919, at *1 n.1 (D.N.H. Aug. 29, 2012) (granting request for jurisdictional discovery because "[a]lthough Orion did not … set forth its request for jurisdictional discovery by separate motion, the Moving Defendants [] responded to that request on the merits" and the court "consider[ed] Orion's request for discovery as if it had been properly presented by separate motion"). And it is far from unusual to allow jurisdictional discovery in response to a plaintiff's informal request made in an opposition to a motion to dismiss. *See, e.g.*, *O'Neil v. Somatics, LLC*, No. 20-CV-175-PB, 2020 WL 7043559, at *2 (D.N.H. Dec. 1, 2020) (Barbadoro, J.) (granting request for jurisdictional discovery because "O'Neil timely requested jurisdictional discovery as part of her objection to Elektrika's motion to dismiss.").[16]

---

[16] *See also K.B. v. Inter-Cont'l Hotels Corp.*, No. 19-CV-1213-AJ, 2020 WL 8674188, at *8 (D.N.H. Sept. 28, 2020) ("The court may find a party's request for jurisdictional discovery diligent where the party includes it in as part of its objection to a motion to dismiss"); *Ticked Off, Inc. v. TickCheck, LLC*, No. 19-CV-627-AJ, 2019 WL 5295148, at *2 (D.N.H. Oct. 17, 2019) (same).

In any event, a request for a court order may be made by *oral* motion. While Federal Rule of Civil Procedure 7(b) provides "[a] request for a court order must be made by motion," the motion need only "be in writing *unless* made during a hearing." Fed. R. Civ. P. 7(b)(1)(A). And here, the Stokingers did reiterate their request and made an oral motion for jurisdictional discovery about Armslist's contacts with New Hampshire at oral argument. During oral argument, the district court specifically requested: "Is anyone seeking additional jurisdictional discovery?*"* and "So if you want jurisdictional discovery, make your case now and I'll decide what it would -- what you would get …." (JA400–JA401 at 7:21–22, 8:7–8).

The Stokingers' counsel—at the district court's invitation—proceeded to make an oral motion, which articulated the relief sought and the basis for seeking such relief with particularity, on the record. (*See* JA400–JA403 at 7:21–10:3). And the district court noted: "All right. So you have registered your request for jurisdictional discovery for post-incident conduct by Armslist in connection with New Hampshire." (JA402 at 9:10–12). This oral request for jurisdictional discovery is sufficient in and of itself to constitute a separate motion under the Federal Rules of Civil Procedure.

Thus, the Stokingers' request for jurisdictional discovery should have been granted. Accordingly, this Court should reverse the district court's denial of the request for jurisdictional discovery.

## **CONCLUSION**

For the foregoing reasons, Plaintiffs-Appellants Kurt Stokinger and Janella Stokinger respectfully request that this Court reverse the district court's order and judgment granting the motion to dismiss for lack of personal jurisdiction, and denying the Stokingers' request for jurisdictional discovery, and remand this proceeding to the district court.

Dated: September 23, 2024          Respectfully submitted,

**BLANK ROME LLP**

By:  */s/ John D. Kimball*
     John D. Kimball, Esq.
     Robyn L. Michaelson, Esq.
     Reena Jain, Esq.
     Alexander D. Newman, Esq.
     1271 Avenue of the Americas
     New York, NY 10020
     (212) 885-5000
     john.kimball@blankrome.com
     robyn.michaelson@blankrome.com
     reena.jain@blankrome.com
     alexander.newman@blankrome.com

**MCDOWELL & MORRISSETTE, P.A.**
     Mark D. Morrissette, Esq.
     Brian J. Stankiewicz, Esq.
     282 River Road
     Manchester, NH 03105
     (603) 623-9300
     mmorrissette@mcdowell-morrissette.com
     bstankiewicz@mcdowell-morrissette.com

**BRADY CENTER TO PREVENT GUN VIOLENCE**
     Douglas N. Letter, Esq.
     840 First Street NE, Suite 400
     Washington, DC 20005
     (202) 370-8100
     dletter@bradyunited.org

     *Counsel for Plaintiffs-Appellants Kurt Stokinger and Janella Stokinger*

## <u>CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT, TYPEFACE REQUIREMENTS, AND TYPE-STYLE REQUIREMENTS</u>

1.      This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B)(i) because, excluding the part of the document exempted by Federal Rule of Appellate Procedure 32(f), this brief contains no more than 13,000 words. This document contains 8,276 words.

2.      This document complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word 365 in 14-point Times New Roman font.

Dated: September 23, 2024                    */s/ John D. Kimball*
                                                                John D. Kimball

                                                                *Counsel for Plaintiffs-Appellants Kurt Stokinger and Janella Stokinger*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on September 23, 2024, I electronically filed the foregoing document with the United States Court of Appeals for the First Circuit by using the CM/ECF system, which electronically served a copy on all counsel of record.


Dated: September 23, 2024                     */s/ John D. Kimball*                     
                                                              John D. Kimball

ADDENDUM

## ADDENDUM TABLE OF CONTENTS

**Page**

Memorandum and Order, filed July 15, 2024.................................................  ADD1

Judgment, filed July 15, 2024 .........................................................................ADD26

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE**

<u>**Kurt Stokinger et al.**</u>

      v.

                                  Case No. 23-cv-428-PB-TSM
                                  Opinion No. 2024 DNH 056

<u>**Armslist, LLC**</u>

<u>**MEMORANDUM AND ORDER**</u>

Kurt Stokinger, a former Boston police officer, was shot in the line of duty by a felon in possession of a handgun that was at one point sold via Armslist.com, a website that hosts firearms classifieds. Stokinger and his spouse sued Armslist for negligence and other torts, alleging that Armslist's failure to institute certain safeguards on its website enabled the shooter to unlawfully obtain the handgun. Armslist has moved to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(2), arguing that this court lacks personal jurisdiction to hear the claims. I agree and therefore grant the motion to dismiss.[1]

---

[1]    Armslist filed a concurrent motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. Doc. 20. That motion is denied as moot in light of my conclusion that I lack jurisdiction to hear the plaintiffs' claims.

ADD1

# I.     **BACKGROUND**

A.     **Facts**

1.     <u>Armslist's Website and Business Model</u>

Armslist is a limited liability company organized and headquartered in Pennsylvania. Doc. 21-2 at 2. Armslist owns and operates Armslist.com, which is a "craigslist-style, for-profit, online firearms marketplace that enables users to sell firearms and firearm-related accessories to private individuals through website postings." Doc. 21-9 at 4.

The website enables users to create listings offering to either buy or sell various products. Doc. 21-2 at 5. When creating a listing, users are prompted to input certain information, including their location, email address, and a description of the item for sale. <u>Id.</u> at 4-5. To locate listings of interest, users can input a keyword into a search bar and then filter the results by various criteria, including location. <u>Id.</u> at 3. This filtering function allows users to limit their results to items listed for sale in a particular state, including New Hampshire. <u>Id.</u> Users can then respond to listings by either utilizing an email link embedded in the listing or contacting the seller directly using information provided in the listing. <u>Id.</u> at 5-6. All transactions occur offline, without any further involvement from Armslist. <u>Id.</u>

Generally speaking, Armslist's users fall into one of two categories. "Private parties" are individual users who wish to make an occasional sale or

2

ADD2

purchase. Id. at 4. Private parties are not required to register an account
with Armslist and can make a limited number of postings, free of charge. Id.
at 4, 6. "Premium vendors," in contrast, are typically federally-licensed
firearms dealers seeking to engage in more regular sales. Id. at 3. Premium
vendors must register an account and are subject to Armslist's approval. Id.
To obtain approval, a vendor must provide evidence of its federal firearms
license or else commit to selling only non-firearm products, such as gun
holsters or other accessories. Id. Premium vendors pay recurring membership
fees and, in exchange, are permitted to create an unlimited number of
listings. Id.

Armslist derives revenue from the membership fees of its premium
vendors and fees charged to third-party advertisers who purchase advertising
space on the website. Id. at 6. Armslist does not obtain any revenue directly
from private parties or their listings. Id.

2.    Underlying Facts

In 2015, Derek McNamara posted a Glock Model 27 handgun for
private sale on Armslist. Doc. 34-1 at 12. Sara Johnson, a resident of New
Hampshire, responded to McNamara's listing with an offer to purchase the
handgun. Id. McNamara agreed and, after confirming that Johnson had the
required permits, he transferred the firearm to her in Warner, New
Hampshire. Id. at 12-13.

ADD3

Unbeknownst to McNamara, Johnson was a gun trafficker who had used Armslist to purchase dozens of firearms, often acting as a straw purchaser for her then-boyfriend, Daniel Sullivan. Id. at 5; Doc. 1 at 29. Plaintiffs allege that Johnson later sold McNamara's firearm to Grant Headley, a prohibited person with several felony convictions, either directly or indirectly through Sullivan. Doc. 1 at 29-30.

On January 8, 2016, Headley used the handgun that he allegedly obtained from Johnson to shoot Stokinger multiple times in the leg while Stokinger was working as a police officer in Boston, Massachusetts. Id. at 3-4. Stokinger suffered permanent injuries as a result, prematurely ending his career as a police officer. Id. at 42-43.

## B.    Procedural History

In October 2018, Stokinger and his wife brought suit against Armslist in Massachusetts state court for negligence and other torts. Doc. 21-5 at 28-38. Armslist responded with two separate motions to dismiss. The first asserted that the court lacked personal jurisdiction and the second argued that the plaintiffs' claims failed on the merits because they were preempted by Section 230 of the Communications Decency Act, 47 U.S.C. § 230. Doc. 21-10 at 5.

The Massachusetts Superior Court granted Armslist's second motion to dismiss on the merits, but declined to address Armslist's personal jurisdiction

ADD4

argument. Doc. 21-6 at 2 n.3. Armslist filed a motion for partial

reconsideration, asking the court to address its personal jurisdiction motion

in order to preclude a potential remand on that basis should the plaintiffs

appeal. Doc. 21-9 at 3. The court issued a brief order concluding that it lacked

personal jurisdiction based on the present record but that the plaintiffs were

granted leave to obtain jurisdictional discovery. Id.

Although most of the plaintiffs' discovery was aimed at Armslist's

contacts with Massachusetts, several requests also sought information

related to Armslist's contacts with New Hampshire. For example, the

plaintiffs requested documents pertaining to Armslist's communications with

New Hampshire-based users and third-party advertisers, as well as

Armslist's marketing efforts in the state. Doc. 21-7 at 5-14. After initially

objecting to the requests, Armslist agreed to provide the plaintiffs with

limited discovery on its contacts with New Hampshire. Doc. 21-8 at 3-4.

Armslist responded to the plaintiffs' document requests, but only as to its

contacts with New Hampshire in 2015 and 2016, which Armslist viewed as

the relevant time period for determining personal jurisdiction. Id.

Armslist represented that it had 8 New Hampshire-based premium

vendors in 2015 and 11 in 2016, which resulted in $1,670 in revenue in 2015

and $2,910 in 2016. Doc. 21-2 at 7. Armslist provided the plaintiffs with all

documents regarding its communication with and solicitation of New

5

Hampshire-based premium vendors during this time frame, which consisted of a single email from a New Hampshire firearms dealer providing Armslist with a copy of the dealer's federal firearm license. Doc. 21-8 at 3, 6-7. Armslist denied having any documents pertaining to its advertising in New Hampshire or other efforts to increase sales in the state in 2015 or 2016. Id. at 3. It also denied having any documents pertaining to its communications with New Hampshire-based private parties or third-party advertisers in 2015 or 2016. Id. Following the close of jurisdictional discovery, the Massachusetts Superior Court concluded that it lacked personal jurisdiction over Armslist and again dismissed the plaintiffs' claims. Doc. 21-9 at 10.

Approximately two years later, in September 2023, the plaintiffs filed a complaint against Armslist in this court. Doc. 1 at 1. The complaint is substantially similar to the complaint filed in Massachusetts and advances the same theories of liability: negligence, aiding and abetting tortious conduct, public nuisance, loss of spousal consortium, and loss of support. Id. at 31-43. The crux of the plaintiffs' claims is that Armslist "negligently and recklessly designed [its website] in such a way that it actively encourages, assists, and profits from the illegal sale and purchase of firearms." Id. at 2. These defects, the plaintiffs allege, proximately caused Stokinger's injuries because they enabled Headley to unlawfully obtain the handgun used in the shooting. Id.

6

ADD6

## II.  <u>ANALYSIS</u>

Under the Due Process Clause of the Fourteenth Amendment, a court may only exercise jurisdiction over individuals who "have certain minimum contacts with [the forum] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'"[2] <u>Int'l Shoe Co. v. Washington</u>, 326 U.S. 310, 316 (1945) (quoting <u>Milliken v. Meyer</u>, 311 U.S. 457, 463 (1940)). Armslist moves to dismiss the plaintiffs' complaint under Rule 12(b)(2) for lack of personal jurisdiction, asserting that the plaintiffs cannot establish that it had the constitutionally-required minimum contacts with New Hampshire. The plaintiffs argue that jurisdiction can be found based on the current record but ask the court, in the alternative, to defer a ruling on the motion and allow jurisdictional discovery if personal jurisdiction cannot be established on the current record. I begin by first considering whether the plaintiffs have established jurisdiction on the current record before turning to their alternative request for jurisdictional discovery.

---

[2]     Where, as here, a case is brought pursuant to the court's diversity jurisdiction, the plaintiff must demonstrate that the "defendant's contacts with the state satisfy both the state's long-arm statute as well as the Due Process Clause of the Fourteenth Amendment." <u>Vapotherm, Inc. v. Santiago</u>, 38 F.4th 252, 258 (1st Cir. 2022). Because New Hampshire's long-arm statute is "coextensive with the outer limits of due process," my analysis focuses exclusively on the constitutional inquiry. <u>Sawtelle v. Farrell</u>, 70 F.3d 1381, 1388 (1st Cir. 1995).

ADD7

A. **Personal Jurisdiction**

When faced with a motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of establishing that the court has jurisdiction over the defendant. Rosenthal v. Bloomingdales.com, LLC, 101 F.4th 90, 94 (1st Cir. 2024). "[A] district court may choose from among several methods for determining whether the plaintiff has met [this] burden." Kuan Chen v. U.S. Sports Acad., Inc., 956 F.3d 45, 51 (1st Cir. 2020) (quoting Baskin-Robbins Franchising LLC v. Alpenrose Dairy, Inc., 825 F.3d 28, 34 (1st Cir. 2016)). Where, as here, the motion to dismiss is filed "at the inception of the case and the issue of jurisdiction is not intertwined with the merits, the prima facie approach controls." Motus, LLC v. CarData Consultants, Inc., 23 F.4th 115, 121 (1st Cir. 2022).

Under this approach, the plaintiff must "proffer evidence which, taken at face value, suffices to show all facts essential to personal jurisdiction." Baskin-Robbins, 825 F.3d at 34. The plaintiff's evidence must be taken as true and construed in the light most favorable to the plaintiff's jurisdictional claim. Nandjou v. Marriott Int'l, Inc., 985 F.3d 135, 147 (1st. Cir. 2021). In addition to evidence proffered by the plaintiff, I may also consider facts proffered by the defendant, but only to the extent that they are uncontradicted. A Corp. v. All Am. Plumbing, Inc., 812 F.3d 54, 58 (1st Cir. 2016).

The plaintiffs claim only specific jurisdiction, which exists where the "case relates sufficiently to, or arises from, a significant subset of contacts between the defendant and the forum." Phillips Exeter Acad. v. Howard Phillips Fund, 196 F.3d 284, 288 (1st Cir. 1999). To establish the existence of specific jurisdiction, the plaintiffs must demonstrate that:

> (1) their claim directly arises out of or relates to the defendant's forum-state activities; (2) the defendant's contacts with the forum state represent a purposeful availment of the privilege of conducting activities in that state, thus invoking the benefits and protections of that state's laws and rendering the defendant's involuntary presence in that state's courts foreseeable; and (3) the exercise of jurisdiction is ultimately reasonable.

Scottsdale Cap. Advisors Corp. v. The Deal, LLC, 887 F.3d 17, 20 (1st Cir. 2018). "Failure to make any one of these showings dooms any effort to establish specific personal jurisdiction." Id. Because I find that the plaintiffs have failed to establish purposeful availment, I conclude that personal jurisdiction cannot be based on the current record without addressing the remainder of the tripartite test. See Motus, 23 F.4th at 124.

The purposeful availment requirement "ensures that a defendant will not be haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts, or of the unilateral activity of another party or a third person." Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475 (1985) (cleaned up). To this end, the "purposeful availment inquiry focuses on the defendant's intentionality and rests on two cornerstones: voluntariness and

foreseeability." Rosenthal, 101 F.4th at 96 (cleaned up). Voluntariness requires that the defendant's contacts with the forum proximately result from the defendant's own actions, rather than those of the plaintiff or other third parties. Id. Foreseeability, in turn, requires that the defendant's contacts with the forum "are such that [the defendant] should reasonably anticipate being haled into court there." Burger King, 471 U.S. at 474 (quoting World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980)).

Although the purposeful availment inquiry "often proves dispositive" in "website cases," Motus, 23 F.4th at 124, the Supreme Court has yet to "definitively answer[] how a defendant's online activities translate into contacts" for the purposes of personal jurisdiction, Plixer Int'l, Inc. v. Scrutinizer GmbH, 905 F.3d 1, 7 (1st Cir. 2018). Despite the limited guidance on the matter, "[o]ne baseline principle has emerged: a website operator does not necessarily purposefully avail itself of the benefits and protections of every state in which its website is accessible." Plixer, 905 F.3d at 8 (collecting cases). Rather, to justify the exercise of jurisdiction over an out-of-state website operator, "there must be more," such as "evidence of specific targeting of forum residents" or "evidence that the website has generated 'substantial revenue from forum residents.'" Motus, 23 F.4th at 125 (quoting Chen, 956 F.3d at 60).

10

The plaintiffs principally rely on two facts to demonstrate purposeful availment: first, that Armslist created a filtering feature for users to isolate New Hampshire-based listings, and second, that Armslist derived revenue from a handful of New Hampshire-based premium vendors. These facts, however, do not reveal the sort of substantial and voluntary connection to New Hampshire that due process demands.

In the plaintiffs' view, Armslist specifically targeted New Hampshire residents by instituting a filtering function that enabled users to isolate listings in New Hampshire. While it is true that a website's references to the forum state may sometimes demonstrate intentional targeting, see, e.g., Sarah's Hat Boxes, LLC v. Patch Me Up, LLC, 2013 DNH 058, 2013 WL 1563557, at *6-7 (D.N.H. Apr. 12, 2013), the plaintiffs read too much into Armslist's inclusion of New Hampshire in its 50-state filtering feature. The decision to include New Hampshire alongside the other 49 states indicates that Armslist is amenable to serving the New Hampshire market, but it does not indicate that Armslist specifically targeted New Hampshire. Afterall, "[t]o target every user everywhere . . . is to target no place at all." Johnson v. TheHuffingtonPost.com, Inc., 21 F.4th 314, 321-322 (5th Cir. 2021). Stated differently, because the filtering feature is necessarily designed to benefit users regardless of their location, it does not render the website "more likely to solicit or serve customers in [New Hampshire] than anywhere else" and

11

therefore does not specifically target New Hampshire. Motus, 23 F.4th at 123;

cf. Sarah's Hat Boxes, 2013 WL 1563557, at *2, 6 (finding that a "defendant

designed [its] website to reach into New Hampshire" by including a

circumscribed list of specific states and towns where it shipped its products,

including New Hampshire and several of its towns).

The courts of appeals have similarly refused to find specific targeting

based solely on the forum state's inclusion in a website feature that merely

references all 50 states. For example, in Fidrych v. Marriott International,

Inc., the Fourth Circuit concluded that a hotel website did not target South

Carolina residents by "includ[ing] South Carolina as an option in the drop-

down menu used by customers to select their state of residence when making

reservations." 952 F.3d 124, 142-143 (4th Cir. 2020). Noting that the drop-

down menu also listed "every other state in the country," the court reasoned

that the feature indicated the hotel's willingness "to accept reservations from

South Carolina residents" but did not demonstrate that the hotel was

specifically "targeting South Carolina residents through its website." Id. "To

the contrary," the court explained, "the list of options confirms that the

website was accessible to all but targeted at no one in particular." Id. at 143.

Similarly, in NexLearn, LLC v. Allen Interactions, Inc., the Federal

Circuit rejected the plaintiff's argument that the defendant's website

"specifically targeted Kansas residents" by allowing customers to "select

12

ADD12

'Kansas' from a dropdown menu in the billing-address section" when placing an order on the website. 859 F.3d 1371, 1377 (Fed. Cir. 2017). Like the Fourth Circuit, the Federal Circuit reasoned that the feature merely indicated the website's "amenability to selling [its products] to Kansas residents," but did not demonstrate that the defendant purposefully availed itself of Kansas law. Id. at 1378.

The reasoning exemplified by these opinions comports with the purpose behind due process limitations on specific jurisdiction, which is "to ensure that States with 'little legitimate interest' in a suit do not encroach on States more affected by the controversy." Ford Motor Co. v. Montana, 592 U.S. 351, 360 (2021) (quoting Bristol-Myers Squibb Co. v. California, 582 U.S. 255, 262 (2017)). Including New Hampshire in the 50-state filtering feature simply renders the website as useful in New Hampshire as it is in every other state and therefore amounts to little more than making the website available in New Hampshire. If this, standing alone, were enough to justify the exercise of jurisdiction, "the universality of websites in the modern world would overwhelm constitutional limitations on the exercise of personal jurisdiction." Chen, 956 F.3d at 60.

Accordingly, the filtering feature alone is not enough to demonstrate specific targeting. Yet the plaintiffs have not proffered any other evidence to demonstrate that Armslist sought to attract New Hampshire residents to its

13

website. Cf. Gather, Inc. v. Gatheroo, LLC, 443 F. Supp. 2d 108, 116 (D. Mass. 2006) (finding purposeful availment where a website not only permitted filtering by state, but also "accept[ed] members from [the forum state]," "solicit[ed] their continued business," and "communicat[ed] directly with [forum state] users"). For example, there is no evidence that Armslist advertised in New Hampshire or otherwise solicited New Hampshire residents to use its website. Cf. Nowak v. Tak How Invs., Ltd., 94 F.3d 708, 717 (1st Cir. 1996) (finding purposeful availment where the defendant "advertised its hotel in national and international publications that circulated in Massachusetts;" "solicited by direct mail some of its previous guests residing in Massachusetts;" and "listed its hotel in various hotel guides used at travel agencies in Massachusetts"). Nor is there evidence that Armslist affirmatively accepted or encouraged posts from New Hampshire users; to the contrary, it is undisputed that Armslist does not review listings in the regular course of business. Cf. Zippo Mfg. Co. v. Zippo Dot Com, Inc., 952 F. Supp. 1119, 1126 (W.D. Pa. 1997) (finding purposeful availment where a website "repeatedly and consciously chose to process [forum state] residents' applications [for an account] and to assign them passwords"). And, with the exception of a single email from a New Hampshire-based firearms dealer that apparently went unanswered, there is no evidence that Armslist has ever communicated with any New Hampshire residents. Cf. Gather, 443

14

ADD14

F. Supp. 2d at 116 (finding purposeful availment based in part on the defendant's direct communications with users in the forum state). Given the absence of evidence that Armslist intentionally and specifically sought to serve the New Hampshire market, the fact that New Hampshire was one of 50 states included in the website's filtering function is of little value.

The plaintiffs' reliance on Armslist's receipt of revenue from New Hampshire-based premium vendors fares no better. That a handful of New Hampshire-based firearms dealers paid for a premium membership does not indicate that Armslist sought to serve the New Hampshire market given the lack of evidence that Armslist did anything to recruit or solicit premium vendors in the state. See Chen, 956 F.3d at 61 (finding no purposeful availment where the defendant's contacts with the state "stem[ed] from [a third party's] unilateral activity"). Indeed, the only evidence in the record is that Armslist "did not actively recruit Premium Vendors in New Hampshire" or "attend[] any trade shows or gun shows in New Hampshire" between 2015 and 2016. Doc. 21-2 at 7. See Chen, 956 at 56 (noting that facts proffered by the defendant may be treated as undisputed, even if challenged by the plaintiff, where the plaintiff fails to offer evidence to the contrary).

Furthermore, that Armslist received some amount of profit from these premium vendors does not establish that it engaged in the sort of "regular flow or regular course of sale in the forum [that] could make the exercise of

jurisdiction foreseeable[.]" Knox v. MetalForming, Inc., 914 F.3d 685, 691-692 (1st Cir. 2019) (cleaned up). Armslist received less than $3,000 per year in revenue from its New Hampshire premium vendors in 2015 and 2016, constituting no more than 0.4% of the company's total revenue. Doc. 21-2 at 7. Such negligible sales stand in stark contrast to the kind of business dealings that courts have generally found sufficient to confer personal jurisdiction. Cf. Plixer, 905 F.3d at 10 (collecting cases and finding purposeful availment where the defendant obtained "nearly $200,000 in business [from forum residents] over three-and-a-half years"); Knox, 914 F.3d at 692 (finding purposeful availment where the defendant engaged in hundreds of transactions with forum state residents which "led to nearly $1.5 million of Massachusetts sales"); see also Oticon, Inc. v. Sebotek Hearing Sys., LLC, 865 F. Supp. 2d 501, 514-515 (D.N.J. 2011) (relied on in Plixer, 905 F.3d at 11) (finding that a defendant's "scant sales activity" could not "justify the exercise of specific jurisdiction" where the defendant made less than ten sales in the forum, "total[ing] less than $3,383.00 in revenue").

Moreover, Armslist's relationship with the New Hampshire premium vendors does not appear to have been particularly meaningful. See PREP Tours, Inc. v. Am. Youth Soccer Org., 913 F.3d 11, 23 (1st Cir. 2019) (noting that an "ongoing and close-working relationship" with a forum resident "could establish the requisite substantial connection between the defendants

16

and the forum"). Nothing in the record indicates that Armslist engaged in regular communications with or otherwise attempted to foster an ongoing relationship with the New Hampshire vendors. To the contrary, it appears as though Armslist's interaction with the premium vendors was limited to verifying that they met the requirements for a premium account and accepting their membership payments. Cf. id. at 25-26 (finding no purposeful availment, despite evidence that the defendant communicated with the in-forum plaintiff on multiple occasions regarding the plaintiff's provision of services within the forum). All told, neither the filtering function nor Armslist's dealings with the New Hampshire premium vendors, either alone or in combination, demonstrates that Armslist had a "substantial connection with the forum State" sufficient to authorize the exercise of jurisdiction.[3]

---

[3]    Although the plaintiffs primarily argue that purposeful availment can be found based on Armslist's intentional targeting of the forum, they argue in the alternative that purposeful availment could "be found under a stream-of-commerce theory." Doc. 28-1 at 18. In order to succeed on such a theory, the plaintiffs would need to demonstrate the existence of certain "'plus' factors evincing a corporate defendant's deliberate attempt to serve the forum state, that is, factors indicating something over and above the defendant's mere awareness that its products were entering a given market in the stream of commerce." Rosenthal, 101 F.4th at 96 (quoting Motus, 23 F.4th at 124-125). The plaintiffs' alternative "stream-of-commerce" theory is premised on the same evidence as their primary intentional targeting theory; that is, "Armslist's state-specific search function and New Hampshire premium vendors[.]" Doc. 28-1 at 18. For the reasons I explained, this evidence is insufficient to demonstrate that Armslist intended to serve the New Hampshire market, regardless of how it is couched. See Rosenthal, 101 F.4th at 96.

Burger King, 471 U.S. at 475 (quoting McGee v. Int'l Life Ins. Co., 355 U.S. 220, 223 (1957)).

The only other evidence proffered by the plaintiffs in support of purposeful availment pertains to the number of New Hampshire-based listings posted to Armslist in recent years. For example, the plaintiffs point to data that, from 2018 and 2020, Armslist hosted an average of 16,277 listings per year from New Hampshire-based private parties. Doc. 28-5 at 2-3. The plaintiffs also supplied evidence that, as of January 2024, there were 1,607 active listings for items located in New Hampshire. Doc. 28-4 at 2.

Although the plaintiffs make passing reference to this evidence throughout their brief, they fail to articulate a developed argument as to how it supports their showing of jurisdiction. Regardless, the evidence does not indicate that Armslist purposefully and voluntarily availed itself of the privilege of conducting activities in New Hampshire.[4]

_____

[4]    I note that there is a substantial question as to whether evidence postdating when the cause of action arose is even relevant to specific jurisdiction. Armslist relies on Harlow v. Children's Hospital for the proposition that "in most cases, contacts coming into existence after the cause of action arose will not be relevant" to the specific jurisdiction inquiry. 432 F.3d 50, 62 (1st Cir. 2005). Plaintiffs counter that Harlow is inapplicable because their public nuisance claim raises a continuing tort, which the court in Plixer found falls outside Harlow's "general rule." 905 F.3d at 11. I need not stake out a position on this legal issue because the evidence the plaintiffs rely on is not sufficient to establish purposeful availment in any event.

18

ADD18

As I explained, the purposeful availment inquiry turns on the defendant's own actions, and not those of third parties. Thus, "any contacts that cannot be attributed 'proximately' to the defendant's own activities constitute 'unilateral' activity that cannot establish purposeful availment." PREP Tours, Inc., 913 F.3d at 20 (quoting Burger King, 471 U.S. at 475). Without any evidence that Armslist solicited New Hampshire citizens to use its website or otherwise involved itself in their posts, the New Hampshire-based listings can only be regarded as the unilateral activity of third parties who happen to reside in New Hampshire. Cf. be2 LLC v. Ivanov, 642 F.3d 555, 559 (7th Cir. 2011) (finding no purposeful availment based on evidence that multiple forum residents created profiles on the defendant's website and noting that, absent evidence of specific targeting, the website users may have created profiles "unilaterally by stumbling across the website").

Furthermore, because private parties can create listings for free, the sheer number of New Hampshire-based listings does not demonstrate that Armslist knowingly derived "substantial revenue from forum residents." Chen, 956 F.3d at 60. While it could be inferred that Armslist obtained at least some amount of third-party advertising revenue from the New Hampshire listings, the record lacks any basis on which to conclude that this revenue was at all significant. There is no evidence as to how much of Armslist's advertising revenue can be linked to the New Hampshire listings

19

ADD19

and, absent evidence that the New Hampshire listings accounted for a significant portion of the overall activity on the website, I cannot infer that any such revenue would constitute a sufficiently substantial portion of Armslist's business. Cf. Rancourt v. Meredith Corp., No. 22-cv-10696-ADB, 2024 WL 381344, at *8 (D. Mass. Feb. 1, 2024) (finding purposeful availment where the plaintiffs produced evidence that forum-based users of a free mobile application accounted for "over $66,000 or 2% of the App's total U.S. ad revenue").

At bottom, the plaintiffs have failed to proffer evidence that Armslist voluntarily developed the sort of substantial connection with New Hampshire that would render the exercise of jurisdiction foreseeable. Accordingly, the plaintiffs have not met their burden of establishing specific jurisdiction.

**B.   Jurisdictional Discovery**

In light of this conclusion, the question then becomes whether the plaintiffs should be granted leave to pursue additional jurisdictional discovery. The plaintiffs acknowledge that they received some amount of discovery regarding Armslist's contacts with New Hampshire in 2015 and 2016 through the Massachusetts action but request additional discovery as to Armslist's contacts with New Hampshire between 2016, when the shooting

20

occurred, and 2023, when the complaint was filed.[5]

A plaintiff seeking jurisdictional discovery "must make a colorable claim of jurisdiction and must show that it has been diligent in preserving its rights" to such discovery. Motus, 23 F.4th at 128 (cleaned up). To satisfy this burden, the plaintiff must "present facts to the court which show why jurisdiction would be found if discovery were permitted." Negro-Torres v. Verizon Comm'ns, Inc., 478 F.3d 19, 27 (1st Cir. 2007). "Mere conjecture or speculation is not enough." Williams v. Romarm, SA, 756 F.3d 777, 786 (D.C. Cir. 2014) (cleaned up).

Although "[a] timely and properly supported request for jurisdictional discovery merits solicitous attention," district courts enjoy "broad discretion to determine whether jurisdictional discovery is warranted," Motus, 23 F.4th at 128 (cleaned up). Thus, "even when the plaintiff has been diligent and has made a colorable claim for personal jurisdiction," the court retains discretion to conclude that discovery is not warranted. United States v. Swiss Am. Bank, Ltd., 274 F.3d 610, 525 (1st Cir. 2001).

---

[5]     As I explained, see supra note 4, there is a substantial question as to whether post-tort contacts are even relevant to the plaintiffs' demonstration of jurisdiction. Of course, if such contacts cannot be used to establish jurisdiction, the plaintiffs' request would fail on its face. See Noonan v. Winston, 135 F.3d 85, 95 (1st Cir. 1998) (holding that jurisdictional discovery was not warranted where it was aimed at an irrelevant time period). However, I need not resolve the matter on this basis given my conclusion that jurisdictional discovery is not warranted even assuming that post-tort contacts are relevant.

21

The plaintiffs' request for jurisdictional discovery must be denied for several reasons. Rather than formally moving for jurisdictional discovery before responding to the motion to dismiss, the plaintiffs opposed Armslist's motion to dismiss on the merits, and only requested jurisdictional discovery should I disagree. Presenting a request for jurisdictional discovery in this way contravenes both this court's Local Rules and the Federal Rules of Civil Procedure.

Local Rule 7.1(a)(1) provides that parties may not "combine multiple motions seeking separate and distinct relief into a single filing," which the plaintiffs violated by asking in their opposition to Armslist's motion to dismiss that I stay ruling on the motion and allow jurisdictional discovery if I was not willing to deny the motion on the existing record. Additionally, Federal Rule of Civil Procedure 7(b) requires that a request for a court order be made via written motion. As a general rule, "informal requests for court orders contained within . . . opposition papers" are "insufficient to satisfy [this] motion requirement[.]" Wright & Miller, 5 Federal Practice & Procedure § 1191 (4th ed. 2023). Accordingly, the First Circuit has recognized that parties do not properly present a request for jurisdictional discovery by "merely mention[ing] the option of jurisdictional discovery in [an] opposition to [a] motion to dismiss." Motus, 23 F.4th at 127-128; see also United Techs. Corp. v. Mazer, 556 F.3d 1260, 1280-1281 (11th Cir. 2009) (affirming the

22

ADD22

denial of jurisdictional discovery where the plaintiff "never formally moved the district court for jurisdictional discovery but, instead, buried such requests in its briefs as a proposed alternative" to granting the motion to dismiss).

Even if I were to disregard the plaintiffs' procedural missteps, policy considerations counsel against granting such requests for discovery in the alternative to a request for a ruling on the merits. Cf. N.Y. State Teamsters Conf. Pension & Ret. Fund v. Express Servs., Inc., 426 F.3d 640, 648 (2d Cir. 2005) ("a party's failure to seek discovery under Rule 56(f) before responding to a summary judgment motion is 'itself sufficient grounds to reject a claim that the opportunity for discovery was inadequate.'") (quoting Williams v. R.H. Donnelly, Corp., 368 F.3d 123, 126 n.1 (2d Cir. 2004)). Requesting a ruling on the merits before seeking discovery potentially burdens both the court and the parties with the need to engage in two rounds of briefing on the same issue: one prior to the receipt of discovery, and one after. These inefficiencies can, and should, be avoided by undertaking a clear-eyed assessment of the evidence at the outset and moving for whatever additional discovery is needed to establish jurisdiction, without first attempting to oppose the motion with an incomplete record.

The plaintiffs' request for jurisdictional discovery is also deficient because it does not identify the discovery they seek or explain how it would

confer jurisdiction. The plaintiffs' opposition brief generally asserts that they should be "entitled to probe Armslist's assertions and obtain updated evidence," but fails to offer any specifics. Doc. 28-1 at 22. The plaintiffs provided at least some additional substance to their request at the motion hearing, where they clarified that they were seeking discovery on Armslist's post-tort contacts with New Hampshire. Doc. 35 at 8, 21-22 (expressing the belief that jurisdictional discovery would reveal "many more premium vendors, more advertising, more significant contacts, [and] more sales in New Hampshire that were brokered by Armslist").

But absent from the plaintiffs' proffer are any "factual allegations suggesting with reasonable particularity the possible existence of contacts" sufficient to confer jurisdiction. Eurofins Pharma U.S. Holdings v. BioAlliance Pharma SA, 623 F.3d 147, 156 (3d Cir. 2010). For example, the plaintiffs have not explained what sort of "significant contacts" they expect to discover, nor have they provided any basis for their belief that Armslist has engaged in "more advertising" or obtained "more premium vendors." Cf. Doane v. Benefytt Techs., Inc., No. 22-10510-FDS, 2023 WL 2465628, at *14 (D. Mass. March 10, 2023) (denying a request for jurisdictional discovery based on a proffer couched in "conclusory terms" without "specific facts of any kind in support of [the plaintiff's] contentions").

24

ADD24

The plaintiffs' failure to provide a more specific proffer is all the more concerning given that they received at least some amount of New Hampshire-specific jurisdictional discovery during the Massachusetts action. See Rice v. Electrolux Home Prods., Inc., 4:15-cv-00371, 2020 WL 247284, at *11 (M.D. Pa. Jan. 15, 2020) (collecting cases and noting that, "[w]here a plaintiff has had the opportunity to conduct jurisdictional discovery, and then fails to make out a prima facie case of personal jurisdiction, courts are entitled to deny the plaintiff's request for further jurisdictional discovery"). The plaintiffs' nonspecific and conclusory proffer thus should be denied because it raises the specter of an impermissible "fishing expedition based only upon bare allegations." Univ. of Mass. v. L'Oreal SA, 36 F.4th 1374, 1385 (Fed. Cir. 2022) (quoting Eurofins, 623 F.3d at 157).

## IV.    CONCLUSION

For the foregoing reasons, the defendant's motion to dismiss for lack of personal jurisdiction (Doc. 21) is granted and its motion to dismiss for failure to state a claim (Doc. 20) is denied as moot. The clerk of court shall enter judgment accordingly and close the case.

SO ORDERED.

/s/ Paul J. Barbadoro
Paul J. Barbadoro
United States District Judge

July 15, 2024

cc:    Counsel of record

25

ADD25

UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

Kurt Stokinger, et. al.

    v.                                    Case No. 1:23-cv-428-PB-TSM

Armslist, LLC

<u>JUDGMENT</u>

In accordance with the Memorandum and Order by Judge Paul Barbadoro dated July 15, 2024, judgment is hereby entered.

The prevailing party may recover costs consistent with Fed. R. Civ. P. 54(d) and 28 U.S.C. § 1920.

                            By the Court:

                              /s/Daniel J. Lynch
                            Daniel J. Lynch
                            Clerk of Court

Date: July 15, 2024

cc: Counsel of Record

ADD26