# United States Court of Appeals

*for the*

# First Circuit

---

Case No. 24-1697

---

KURT STOKINGER; JANELLA STOKINGER,

*Plaintiffs-Appellants,*

v.

ARMSLIST, LLC,

*Defendant-Appellee.*

---

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW HAMPSHIRE, CONCORD, IN CASE NO. 1:23-CV-00428-PB,
PAUL J. BARBADAORO, U.S. DISTRICT JUDGE

---

## REPLY BRIEF FOR PLAINTIFFS-APPELLANTS

---

DOUGLAS N. LETTER
BRADY UNITED AGAINST GUN VIOLENCE
840 First Street NE, Suite 400
Washington, DC 20002
(202) 370-8100

JOHN D. KIMBALL
ROBYN L. MICHAELSON
REENA JAIN
ALEXANDER D. NEWMAN
BLANK ROME LLP
1271 Avenue of the Americas
New York, New York 10020
(212) 885-5000

MARK D. MORRISSETTE
BRIAN J. STANKIEWICZ
MCDOWELL & MORRISSETTE PA
P.O. Box 3360
282 River Road
Manchester, New Hampshire 03105
(603) 623-9300

*Attorneys for Plaintiffs-Appellants*

# <u>TABLE OF CONTENTS</u>

**Page**

ARGUMENT ....................................................................................................1

I.    THE STOKINGERS SATISFIED THE REQUIREMENTS OF
PERSONAL JURISDICTION ...............................................................4

    A.    Armslist Deliberately Targeted Its Behavior Towards New
Hampshire and Could Reasonably Anticipate Being Haled Into
a Court in That State ...................................................................5

    B.    The Stokingers' Claims Are Sufficiently Related to Armslist's
Contacts with New Hampshire ..................................................13

    C.    Exercise of Personal Jurisdiction Is Reasonable and Consistent
with Principles of Justice and Fair Play....................................15

II.   IN THE ALTERNATIVE, THIS COURT SHOULD REVERSE THE
DISTRICT COURT'S DENIAL OF JURISDICTIONAL
DISCOVERY .......................................................................................16

    A.    The Stokingers Met the Low Threshold to Merit Jurisdictional
Discovery ...................................................................................17

    B.    Discovery from a Previous Litigation is Not Proper Grounds to
Deny Jurisdictional Discovery...................................................19

CONCLUSION.......................................................................................................21

i

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

## Cases

*Baskin-Robbins Franchising LLC v. Alpenrose Dairy, Inc.*,
  825 F.3d 28 (1st Cir. 2016)..................................................................5

*Blair v. City of Worcester*,
  522 F.3d 105 (1st Cir. 2008)...............................................................17

*Bluetarp Fin., Inc. v. Matrix Const. Co.*,
  709 F.3d 72 (1st Cir. 2013)..................................................................16

*C.W. Downer & Co. v. Bioriginal Food & Sci. Corp.*,
  771 F.3d 59 (1st Cir. 2014)..............................................................6, 16

*Fidrych v. Marriott Int'l, Inc.*,
  952 F.3d 124 (4th Cir. 2020) ...............................................................9

*Gray v. St. Martin's Press, Inc.*,
  929 F. Supp. 40 (D.N.H. 1996)..............................................................4

*Hasson v. FullStory, Inc.*,
  114 F.4th 181 (3d Cir. 2024) ................................................................8

*K.B. v. Inter-Cont'l Hotels Corp.*,
  No. 19-CV-1213-AJ, 2020 WL 8674188 (D.N.H. Sept. 28, 2020)....................18

*Knox v. MetalForming, Inc.*,
  914 F.3d 685 (1st Cir. 2019)................................................................8

*Martin v. Bimbo Foods Bakeries Distrib., LLC*,
  313 F.R.D. 1 (E.D.N.C. 2016) ............................................................20

*Mavrix Photo, Inc. v. Brand Techs., Inc.*,
  647 F.3d 1218 (9th Cir. 2011) ............................................................12

*Motus, LLC v. CarData Consultants, Inc.*,
  23 F.4th 115 (1st Cir. 2022)............................................................9, 17

*N. Laminate Sales, Inc. v. Davis*,
    403 F.3d 14 (1st Cir. 2005)..............................................................4, 13

*Nandjou v. Marriott Int'l, Inc.*,
    985 F.3d 135 (1st Cir. 2021)..................................................................14

*NexLearn, LLC v. Allen Interactions, Inc.*,
    859 F.3d 1371 (Fed. Cir. 2017) ..............................................................9

*Nowak v. Tak How Invs.*,
    94 F.3d 708 (1st Cir. 1996)....................................................................15

*O'Neil v. Somatics, LLC*,
    No. 20-CV-175-PB, 2020 WL 7043559 (D.N.H. Dec. 1, 2020)........................18

*Orion Seafood Int'l, Inc. v. Supreme Grp. B.V.*,
    No. 11-CV-562-SM, 2012 WL 3776919 (D.N.H. Aug. 29, 2012) ....................18

*Plixer Int'l, Inc. v. Scrutinizer GmbH*,
    905 F.3d 1 (1st Cir. 2018)..........................................................10, 13, 15

*Rosenthal v. Bloomingdales.com, LLC*,
    101 F.4th 90 (1st Cir. 2024)..........................................................3, 7, 8

*Sportschannel New Eng. Ltd. P'ship v. Fancaster, Inc.*,
    No. 09CV11884-NG, 2010 WL 3895177 (D. Mass. Oct. 1, 2010) ....................9

*Ticked Off, Inc. v. TickCheck, LLC*,
    No. 19-CV-627-AJ, 2019 WL 5295148 (D.N.H. Oct. 17, 2019)................11, 18

*Tuck v. Shroyer*,
    643 F. Supp. 3d 290 (D.N.H. 2022)..........................................................14

*United States v. Swiss Am. Bank, Ltd.*,
    274 F.3d 610 (1st Cir. 2001)....................................................................17

*In re Vitamins Antitrust Litig.*,
    94 F. Supp. 2d 26 (D.D.C. 2000)..............................................................20

*Zippo Mfg. Co. v. Zippo Dot Com, Inc.*,
    952 F. Supp. 1119 (W.D. Pa. 1997)..........................................................12, 13

iii

**Statutes**

N.H. Rev. Stat. Ann. § 510:4 ........................................................................4

# **ARGUMENT**[1]

Now that the Stokingers have filed their opening brief and Armslist responded, the Court can see that this appeal boils down to Armslist denying there is jurisdiction for this case to proceed in New Hampshire federal court despite the Stokingers adequately alleging this case can validly be heard in that court. Fundamentally, Armslist designed its website so that potential gun buyers and potential gun sellers in New Hampshire can easily use the website tools to find each other and make sale of a gun practicable in that state. Armslist has designed a product that electronically lifts geographic data up so that an unlawful sale of a firearm can easily be carried out by parties who, because of Armslist's conduct, are able to learn that they are both in New Hampshire.

This critical feature was fully intended by Armslist to enable two persons in New Hampshire to locate each other and complete a gun sale—or worse, a New Hampshire seller and an out-of-state buyer interested in taking advantage of New Hampshire's reduced regulatory scheme. In this specific instance, that transaction was a violation of the law. Once Armslist made this transaction possible, events unfolded so that the gun—whose unlawful sale Armslist facilitated in New

---

[1] Capitalized terms not defined herein shall have the meaning ascribed to them in the Stokingers' opening brief ("Open. Br."). Armslist's brief is referred to herein as "Armslist Br."

1

Hampshire to a gun trafficker—was moved a short distance and used to shoot a police officer in Boston.

Despite Armslist's focus on this point in its brief, the fact that this type of transaction did not bring in comparably much revenue to the company is irrelevant. Even if Armslist had made no profit from what it did here, the company could still properly have been sued in New Hampshire, having created the mechanism by which a gun trafficker obtained a gun in New Hampshire from somebody else in New Hampshire, and that gun then went from the trafficker to others, leading to that same gun being used to badly wound Officer Stokinger in the line of duty.

Armslist nevertheless invokes a parade of horribles involving unlimited personal jurisdiction in urging this Court to affirm the district court's dismissal for lack of personal jurisdiction. But, contrary to Armslist's characterization, the Stokingers do not ask this Court to hold broadly that a defendant is subject to personal jurisdiction anywhere its website is accessible. The Stokingers are not asking this Court to make new law. Rather, under a traditional personal jurisdiction analysis based on the facts of this case, as well as principles of basic fairness, exercise of personal jurisdiction over Armslist is appropriate in New Hampshire.

More specifically, Armslist created a website explicitly intended for "local use" in which users list firearms and other items for sale in the state where they live. Armslist created filtering and search features to help visitors to its website find

2

nearby items for sale. Armslist then derives advertising revenue based on the visitors to its website who are looking for nearby items for sale, including the average 16,277 listings each year for firearms for sale in New Hampshire that require no background check. JA246–48. And in this case, the design of Armslist's website facilitated the listing and sale of the Armslist Gun in New Hampshire, directly leading to the Stokingers' injuries.

This is distinct from the circumstances involved in cases like *Rosenthal*,[2] which are heavily relied upon by Armslist. Those cases involve harm allegedly stemming solely from the defendant's website, which identically harmed any website visitor regardless of location. The Stokingers' injuries—including the permanent injuries Officer Stokinger sustained when he was shot in the line of duty with the Armslist Gun—are not the same as those suffered by any visitor to Armslist's website.

In an attempt to limit inquiry into its ties to New Hampshire, Armslist uses the minimal, self-serving factual information it submitted to the district court as both a sword and a shield. It argues that the relevant information is undisputed (because it is solely within Armslist's knowledge) and therefore jurisdiction has not sufficiently been established. But Armslist simultaneously asserts that the same

---

[2] *Rosenthal v. Bloomingdales.com, LLC*, 101 F.4th 90 (1st Cir. 2024).

"undisputed" information defeats the need for narrow, targeted jurisdictional discovery. Allowing a defendant to weaponize the record in this way by inserting disputed issues of fact without giving a plaintiff the chance to probe the defendant's assertions defeats the adversarial litigation process.

As discussed further below, this Court should reverse the district court's order dismissing for lack of jurisdiction. Alternatively, it should reverse the district court's denial of jurisdictional discovery so that the district court's decision can be based on a complete record.

## I. THE STOKINGERS SATISFIED THE REQUIREMENTS OF PERSONAL JURISDICTION

As discussed more fully in the Stokingers' opening brief, to establish specific personal jurisdiction over Armslist, the Stokingers must satisfy the requirements of New Hampshire's long-arm statute, which are co-extensive with the outer limits of constitutional due process. *See* N.H. Rev. Stat. Ann. § 510:4; *N. Laminate Sales, Inc. v. Davis*, 403 F.3d 14, 24 (1st Cir. 2005); *Gray v. St. Martin's Press, Inc.*, 929 F. Supp. 40, 44 (D.N.H. 1996).

Accordingly, the Stokingers need only demonstrate that the exercise of personal jurisdiction complies with federal constitutional standards. This entails a three-part analysis: (1) whether Armslist purposefully availed itself of the privilege of conducting business in New Hampshire; (2) whether the claims at issue arise out of or relate to Armslist's ties to New Hampshire; and (3) whether the exercise of

personal jurisdiction is reasonable. *See, e.g.*, *Baskin-Robbins Franchising LLC v. Alpenrose Dairy, Inc.*, 825 F.3d 28, 35 (1st Cir. 2016).

Although the district court analyzed only the purposeful availment prong, the Stokingers have satisfied all three elements.

### A.     Armslist Deliberately Targeted Its Behavior Towards New Hampshire and Could Reasonably Anticipate Being Haled Into a Court in That State

Armslist's mischaracterizations and red herrings cannot change the fact that Armslist purposefully targeted its actions towards New Hampshire and could reasonably anticipate being haled into court there. Armslist mischaracterizes the Stokingers' position as being based on the mere availability of Armslist's website in that state, despite the Stokingers' explicit statements to the contrary. *Compare* Armslist Br. at 20, *with* Open. Br. at 15. Rather, in addition to the advertisements or posts targeting people located in New Hampshire, Armslist knowingly created location-specific features on its website—designed for "local use"—thereby facilitating the listing and sale of the Armslist Gun within New Hampshire, which directly led to the Stokingers' injuries.

By contrast, Armslist seeks to reshape personal jurisdiction law. The company argues that, because its services bringing gun purchasers and buyers together are accessible everywhere, the company cannot be subject to personal jurisdiction anywhere other than the state in which it is incorporated. That is not the law. Rather,

the question is whether Armslist has voluntarily targeted New Hampshire such that it could reasonably foresee being subject to the state's laws. *See C.W. Downer & Co. v. Bioriginal Food & Sci. Corp.*, 771 F.3d 59, 66 (1st Cir. 2014). Finding personal jurisdiction in this action would not mean that Armslist or other websites are subject to universal jurisdiction in all states, but merely that there are sufficient ties between Armslist, New Hampshire, and the Stokingers' injuries to support personal jurisdiction under these specific circumstances.

Armslist's website is expressly "designed for local interactions," instructs its users to list the real-world locations of firearms and other items for sale, and is designed around connecting prospective buyers with sellers in a specific geographic area.[3] JA241, JA245, JA 247–48. Indeed, that is the heart of Armslist's website and business. As alleged in the Complaint, its co-founder explained his rationale for creating the business: "I saw an interview about Craigslist.com on TV. When I heard them say that they decided to ban all gun related ads … it inspired me to create a place for law abiding gun owners to buy and sell online without all of the hassles of auctions and shipping." JA19 ¶ 72.

---

[3] Armslist's careless assertion that its users arrange "to meet offline, ***whether in the state they were located or elsewhere***," underscores the danger the website poses to New Hampshire residents. Armslist Br. at 26 (emphasis added); *see* JA25 ¶ 114 (citing 18 U.S.C. § 922(a)(5) (stating that federal law "prohibits an unlicensed dealer from selling to anyone who resides in a different state")).

But this case is not about "law abiding gun owners buy[ing] and sell[ing] online." As described in the Complaint, the design and purpose of the Armslist website makes it practical for unscrupulous gun purchasers and nearby prospective gun sellers to find each other easily so that they can engage in transactions that evade the crucial background checks that otherwise prevent guns from being sold to dangerous persons who cannot legally buy or possess them. The very service that Armslist made possible here involves an ***unlawful*** gun sale to a gun trafficker carried out in New Hampshire.

In its brief, Armslist relies on inapt cases in which, unlike this matter, the focus of the plaintiffs' claims was *solely* on defendant's website. For example, in *Rosenthal*, plaintiff's claim related to "session replay code" ("SRC") on defendant Bloomingdale's website, which allegedly intercepted plaintiff's communications. 101 F.4th at 93–94. Accordingly, to satisfy the purposeful availment prong, this Court noted that a plaintiff must show that the "act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State … relate[d] to the insertion of SRC into Bloomingdales' website." *Id.* at 96 (citations and quotations omitted).

Thus, in that case, although the defendant had a real-world nexus to the forum state, the nexus was unrelated to the claims at issue, which were solely about the defendant's website. There, the defendant "deploy[ed] SRC in a manner that would

7

be recognized by the internet browsers of users located anywhere in the world," and failed to show that the defendant *knew* it was targeting the plaintiff in a particular forum state. *Id.* at 97.[4]

Armslist notes that this Court's opinion in *Rosenthal* distinguished its prior opinion in *Knox*, but overlooks that *Rosenthal*'s reasons for doing so do not apply here. *See Rosenthal*, 101 F.4th at 96 (citing *Knox v. MetalForming, Inc.*, 914 F.3d 685 (1st Cir. 2019)). *Rosenthal* notes that, unlike in *Knox*, there was no real-world tie at issue—just the defendant's deployment of a certain type of code on its website. *Id.*

Here, however, as in *Knox*, there is a real-world tie to the forum state—the Armslist Gun was listed for sale and actually sold within New Hampshire. *See generally Knox*, 914 F.3d at 691–94. Unlike the computer code at issue in *Rosenthal*, that situation (which makes gun sales such as occurred here practicable) is not applicable to "users located anywhere in the world." And the Stokingers have shown that Armslist knew it was targeting New Hampshire because Armslist's own website contains features linking specific firearms for sale to persons in New Hampshire.

---

[4] Armslist fares no better with *Hasson v. FullStory, Inc.*, 114 F.4th 181 (3d Cir. 2024), which also pertained to injuries allegedly arising from a defendant's use of session replay code on its website and adopted this Court's reasoning in *Rosenthal*. Like in *Rosenthal*, the court in *Hasson* found that the defendant's in-forum activities ("operating restaurants and selling pizza") were not sufficiently related to the alleged harm at issue (interception of communications on defendant's website). *Id.* at 192.

Armslist's attempt to minimize the import of its location filtering features is similarly flawed because the cases on which it relies lack a nexus between the claims at issue and the forum state. Although not every website with location-filtering features is *automatically* amenable to personal jurisdiction in each of the listed locations, such features are hardly irrelevant. The Stokingers do not merely rely on Armslist's website listing all fifty states. To the contrary, upon information and belief, Armslist's location filtering feature enabled the listing of the Armslist Gun for sale on Armslist's platform in New Hampshire, as well as the real-world sale and transfer of the Armslist Gun in New Hampshire.

By contrast, Armslist cites cases involving alleged trademark infringement, where plaintiffs' only asserted bases for jurisdiction was a universally accessible website. *See Motus, LLC v. CarData Consultants, Inc.*, 23 F.4th 115 (1st Cir. 2022); *Sportschannel New Eng. Ltd. P'ship v. Fancaster, Inc.*, No. 09CV11884-NG, 2010 WL 3895177 (D. Mass. Oct. 1, 2010).[5] Such cases hardly serve to separate website

---

[5] Armslist mistakenly accuses the Stokingers of confusing the relatedness and purposeful availment analyses with respect to *Fidrych v. Marriott Int'l, Inc.*, 952 F.3d 124 (4th Cir. 2020) and *NexLearn, LLC v. Allen Interactions, Inc.*, 859 F.3d 1371 (Fed. Cir. 2017). *See* Armslist Br. at 23. But Armslist overlooks that the district court found these cases relevant to its purposeful availment analysis. *See* ADD12–13. In any event, neither of those cases had any connection to the forum state, and the filtering features had no relation to the claims at issue. *See* Open. Br. at 19–20.

features like those Armslist created from the jurisdictional analysis and the real-world effects in New Hampshire.

Armslist further attempts to limit the Court's consideration of its geographic-based features by claiming that certain of those features were not available in 2015 and 2016, an inherently fact-specific question that the Stokingers have not had the opportunity to investigate. *See* Armslist Br. at 26–27. But Armslist in any event concedes that the district court did not decide the issue of the appropriate time period to analyze, *see* ADD18 n.4, and therefore that issue is not properly considered on this appeal.

Armslist also continues to mischaracterize the Stokingers' positions, cherry-picking the transcript to characterize the Stokingers' injuries as "discrete," (in reference to the shooting itself), despite the Stokingers also asserting a claim for public nuisance—clearly a continuing tort. JA46–50, JA50 ¶ 293 ("The public nuisance caused by Armslist is substantial and ongoing and poses a continual threat to the public …."); *see Plixer Int'l, Inc. v. Scrutinizer GmbH*, 905 F.3d 1, 11 (1st Cir. 2018) (distinguishing *Harlow* as applying to a "discrete-in-time tort" and not to "continuing 'tortious' conduct" (citing *Harlow v. Children's Hosp.*, 432 F.3d 50 (1st Cir. 2005)). Post-2016 conduct is therefore relevant to reflect Armslist's ongoing and expanding purposeful availment, but not necessary to support personal jurisdiction here.

Armslist next relies heavily on its "uncontradicted" testimony regarding its revenue sources. But Armslist omits from this discussion the fact that the testimony is in the form of a carefully crafted, self-serving affidavit that the Stokingers have not had the opportunity to probe through discovery. Even then, Armslist contorts this testimony to avoid taking into account relevant facts. For example, Armslist says that its 2016 revenue was "derived largely from its Premium Vendor subscriptions, not advertising," and that advertising revenue "'depended on the individual contract.'" Armslist Br. at 30. Armslist carefully avoids stating how much revenue it derived from advertising in 2016 (let alone any other time), and how much of that is traceable to individuals accessing the website and viewing or clicking advertisements from within New Hampshire. Armslist falls back on the fact that the Stokingers have not been able to obtain this information through discovery at the pleadings stage of the litigation.[6]

---

[6] At minimum, this Court should reverse the district court's denial of jurisdictional discovery, given that such discovery is likely to uncover facts relevant to the personal jurisdiction analysis. *See, e.g.*, *Ticked Off, Inc. v. TickCheck, LLC*, No. 19-CV-627-AJ, 2019 WL 5295148, at *3 (D.N.H. Oct. 17, 2019) (allowing jurisdictional discovery and noting that "[t]he court need not resolve the [personal jurisdiction] issue at this stage, as it would be premature to rule without allowing TOI an opportunity to further develop the record on its reverse engineering theory. Likewise, the purposeful availment and reasonableness prongs will depend on whether TOI can substantiate its allegation[s] ….").

Armslist conclusorily states that there is no evidence it knew of its New Hampshire user base and therefore should not have expected to derive advertising or other revenue from New Hampshire residents. Armslist Br. at 31. This is untrue. Any visitor to the Armslist website can see the firearms and other products listed for sale in New Hampshire to individuals located within New Hampshire. It is reasonable to assume that Armslist had at least as much information as was publicly available on its own website, if not more. *See Zippo Mfg. Co. v. Zippo Dot Com, Inc.*, 952 F. Supp. 1119, 1126 (W.D. Pa. 1997) (contacts with forum state were not merely "fortuitous" because website operator knew it had customers in that state). Indeed, as of 2021, there were an average of over 16,000 posts annually for firearms for sale in New Hampshire on the Armslist website for which no background check was legally required. JA246–48. (The Stokingers have not had an opportunity to prove the volume of posts in 2015 or 2016.)

Despite Armslist's protests, *Mavrix Photo, Inc. v. Brand Technologies, Inc.*, 647 F.3d 1218 (9th Cir. 2011) is directly analogous. Like in *Mavrix*, Armslist profited from the New Hampshire visitors viewing the advertisements on its website. *Id.* at 1222.[7] And, although Armslist's own public website publicly demonstrated a

---

[7] *See also Mavrix Photo*, 647 F.3d at 1231 ("[Defendant's] theory of jurisdiction would allow corporations whose websites exploit a national market to defeat jurisdiction in states where those websites generate substantial profits from local consumers.").

12

robust New Hampshire user base, it chose to continue allowing items to be listed for sale within the state and to receive advertising revenue from New Hampshire visitors browsing and posting those local listings.[8]

### B.    The Stokingers' Claims Are Sufficiently Related to Armslist's Contacts with New Hampshire

As Armslist acknowledges, the district court did not analyze the "relatedness" prong of personal jurisdiction, but the Stokingers nevertheless satisfied it. Armslist's arguments to the contrary rely on disputed facts and leaps in logic that are inappropriate on a pre-discovery motion to dismiss.

"To satisfy the relatedness requirement, 'the claim underlying the litigation must directly arise out of, or relate to, the defendant's forum-state activities,'" which is "a 'flexible, relaxed standard'" that does not require a defendant to "be physically present in the forum state." *N. Laminate Sales*, 403 F.3d at 25 (citations omitted).

The claims at issue in this proceeding are closely related to and arise out of Armslist's contacts with New Hampshire. Armslist facilitated the illegal sale of the Armslist Gun within New Hampshire, and that gun was used to shoot Officer

---

[8] *See Plixer*, 905 F.3d at 8–9 (failure to block access from a particular location "provides an objective measure of its intent" to serve and profit from that market); *Zippo Mfg.*, 952 F. Supp. at 1126–27 ("If a corporation determines that the risk of being subject to personal jurisdiction in a particular forum is too great, it can choose to sever its connection to the state.").

Stokinger. This is a direct cause of the Stokingers' injuries.[9] Contrary to Armslist's assertion, its New Hampshire contacts are not limited to mere availability of its website in the state, but also include, *inter alia*, the fact that the Armslist Gun was listed and sold *through use of Armslist's platform* within the state.

Armslist improperly attempts to contradict the facts as pleaded in the Stokingers' complaint in an attempt to defeat jurisdiction, while also conflating the personal jurisdiction analysis with the merits of the Stokingers' claims. Armslist Br. at 37–38. It is black-letter law that under the *prima facie* standard, the court takes specific facts affirmatively alleged by the plaintiff as true. *Tuck v. Shroyer*, 643 F. Supp. 3d 290, 293 (D.N.H. 2022) (citing *Lin v. TipRanks, Ltd.*, 19 F. 4th 28, 33 (1st Cir. 2021)). Armslist nevertheless now predicts what might or might not be provable in future discovery. Armslist Br. at 37–38. ("[I]t is, at best, unclear if the sale … can ever be shown to have occurred").

In any event, Armslist's conclusion is based almost entirely on a criminal verdict that found Headley guilty of certain firearm-related offenses and not guilty of others, which Armslist asserts "undermines Appellants' ability to establish the

---

[9] *See Nandjou v. Marriott Int'l, Inc.*, 985 F.3d 135, 149–50 (1st Cir. 2021) (because the "relatedness" factor "'is not as rigid' as the proximate cause inquiry in the tort context,' even if defendants' actions did not proximately cause the injury "that fact alone would not end our inquiry with respect to whether [defendant's acts] could nonetheless suffice to satisfy the relatedness requirement." (citation omitted)).

14

underlying tort in this case." *Id.* Armslist offers no explanation or authority for the assertion that the verdict finding in a criminal trial would bear on the findings in a civil trial, which will be decided under a distinct standard. Moreover, Armslist concedes in a footnote that the jury found Headley "guilty of firearm offenses" even under the higher criminal standard. *Id.* at 37 n.12.

### C.     Exercise of Personal Jurisdiction Is Reasonable and Consistent with Principles of Justice and Fair Play

Armslist addresses only the first of the five "gestalt factors," relying exclusively on an argument that it will be burdened by litigating in New Hampshire. Yet, the company fails to identify any particular burden placed upon it that is not true of any out-of-state litigant.

This is not enough to show that exercise of personal jurisdiction over Armslist is unfair, unreasonable, or inconsistent with principles of justice and fair play. Indeed, courts have regularly found that entities located in another state or even another *country* need to provide a more specific showing to demonstrate a special burden. *See Nowak v. Tak How Invs.*, 94 F.3d 708, 718 (1st Cir. 1996) ("[Defendant] alleges nothing special or unusual about its situation beyond the ordinary cost and inconvenience of defending an action so far from its place of business…. [T]hat is not enough: it simply cannot be the case that every Hong Kong corporation is immune from suit in Massachusetts."); *accord Plixer*, 905 F.3d at 12 (defendant must show burdens are "special or unusual" and, in any event, "logistical challenges

15

'can be resolved through the use of affidavits and video devices.'" (citations and quotations omitted)); *Bluetarp Fin., Inc. v. Matrix Const. Co.*, 709 F.3d 72, 83 (1st Cir. 2013) ("[M]ounting an out-of-state defense most always means added trouble and cost and therefore, this factor is only meaningful where a party can demonstrate some kind of special or unusual burden." (citations and quotations omitted)). Armslist fails to show any kind of special burden here.

Armslist also does not substantively address the remaining four gestalt factors: "(2) the forum state's interest in adjudicating the dispute, (3) the plaintiff's interest in obtaining convenient and effective relief, (4) the judicial system's interest in obtaining the most effective resolution of the controversy, and (5) the common interests of all sovereigns in promoting substantive social policies." *C.W. Downer*, 771 F.3d at 69 (citation omitted). As addressed more fully in the Stokingers' opening brief, each of these factors is either neutral or favors exercising jurisdiction. *See* Open. Br. at 23–24.

## II.    IN THE ALTERNATIVE, THIS COURT SHOULD REVERSE THE DISTRICT COURT'S DENIAL OF JURISDICTIONAL DISCOVERY

The courts impose a low bar to permit jurisdictional discovery, which threshold the Stokingers readily meet. At every turn, Armslist has presented limited, carefully characterized information about its ties to the forum state but has withheld relevant information within its sole possession. Armslist pointedly ignores the fact that, absent jurisdictional discovery, the Stokingers will have no opportunity to

probe the limited information provided or seek additional relevant information—a key reason why the bar to such discovery is so low.

And although Armslist misleadingly attempts to characterize discovery in the Massachusetts Action as duplicative of the jurisdictional discovery sought in this action, that discovery was incomplete and based on different law. The Stokingers should therefore be permitted to take targeted discovery into Armslist's New Hampshire ties.

### A.  The Stokingers Met the Low Threshold to Merit Jurisdictional Discovery

"The threshold [to obtain jurisdictional discovery] is low: a party must identify a non-frivolous dispute about facts that may yield a sufficient predicate for in personam jurisdiction." *Motus*, 23 F.4th at 128; *see also Blair v. City of Worcester*, 522 F.3d 105, 110–11 (1st Cir. 2008) ("Indeed, [this Court] may find an abuse of discretion even where the lower court's decision is 'by no means wholly unsupported by the record.' Thus, where a plaintiff can demonstrate the existence of a plausible factual disagreement or ambiguity, our jurisprudence favors permitting the litigants the opportunity to flesh out the record." (citation omitted)); *United States v. Swiss Am. Bank, Ltd.*, 274 F.3d 610, 625 (1st Cir. 2001) ("We have long held that 'a diligent plaintiff who sues an out-of-state corporation and who makes out a colorable case for the existence of *in personam* jurisdiction *may* well be entitled to a modicum

of jurisdictional discovery if the corporation interposes a jurisdictional defense.'" (citation omitted) (emphases in original)).

Armslist does not deny that the Stokingers made their request for jurisdictional discovery in a timely manner, that Armslist failed to object on procedural grounds, or that Armslist was not prejudiced by the request. Nor does Armslist address the Stokingers' cited case law demonstrating that jurisdictional discovery is regularly granted in response to a plaintiff's informal request made in opposition to a motion to dismiss.[10]

The Stokingers identified for the district court that they sought jurisdictional discovery into, *inter alia*, the "state-based search feature" on Armslist's website and the number of New Hampshire-based sellers. JA407–08. This request is not a mere fishing expedition. It is based on thousands of Armslist posts offering sales in New Hampshire, JA246–48, as well as the Armslist Gun actually being listed and sold through Armslist in New Hampshire.

Accordingly, the Stokingers have satisfied the low bar necessary for jurisdictional discovery, and, to the extent this Court does not reverse the district

---

[10] *See, e.g.*, *O'Neil v. Somatics, LLC*, No. 20-CV-175-PB, 2020 WL 7043559, at *2 (D.N.H. Dec. 1, 2020) (Barbadoro, J.) (granting request for jurisdictional discovery because "O'Neil timely requested jurisdictional discovery as part of her objection to Elektrika's motion to dismiss."); *K.B. v. Inter-Cont'l Hotels Corp.*, No. 19-CV-1213-AJ, 2020 WL 8674188, at *8 (D.N.H. Sept. 28, 2020); *Ticked Off*, 2019 WL 5295148, at *2; *Orion Seafood Int'l, Inc. v. Supreme Grp. B.V.*, No. 11-CV-562-SM, 2012 WL 3776919, at *1 n.1 (D.N.H. Aug. 29, 2012).

18

court's dismissal for lack of personal jurisdiction, it should at minimum reverse the portion of the trial court's order denying jurisdictional discovery.

## B. Discovery from a Previous Litigation is Not Proper Grounds to Deny Jurisdictional Discovery

Armslist argues that prior discovery conducted in the Massachusetts Action should preclude targeted jurisdictional discovery in this proceeding, despite no such finding by the district court. The discovery in the Massachusetts Action was taken in a separate litigation for a different purpose. The prior discovery requests were drafted based on different considerations. Specifically, the discovery there was focused on demonstrating the flow of firearms from New Hampshire into Massachusetts, rather than Armslist's contacts with New Hampshire per se.

The discovery requests in the Massachusetts Action were drafted and served before that court dismissed the action for lack of personal jurisdiction. JA183–91. Indeed, as Armslist noted in its objections to discovery in that proceeding, "[t]hese Requests, therefore, are limited to the narrow issue of whether a Massachusetts court may exercise personal jurisdiction over Armslist in accordance with the Massachusetts Long-Arm Statute …." JA155–56. The trial court here acknowledged as much, referring to the previous discovery as "jurisdictional discovery in the Massachusetts action, to the extent it bore on Massachusetts." JA402 at 9:15–23. In any event, as Armslist admits, it only agreed to produce limited information related to its ties to New Hampshire in 2015 or 2016. Armslist Br. at 42; *see also* JA176–

19

79.[11] Because the goals in the Massachusetts Action were different, the Stokingers had no reason to press Armslist on its limited response concerning New Hampshire ties at that time.

There is therefore no reason Massachusetts-focused discovery should serve as a bar to obtaining jurisdictional discovery focused on ties to New Hampshire. *See Martin v. Bimbo Foods Bakeries Distrib., LLC*, 313 F.R.D. 1, 7–8 (E.D.N.C. 2016) (allowing additional discovery in second, related proceeding despite discovery having already occurred in first proceeding); *In re Vitamins Antitrust Litig.*, 94 F. Supp. 2d 26, 35 (D.D.C. 2000) (permitting jurisdictional discovery where previous court order "may have influenced the scope of discovery taken by plaintiffs").

Moreover, the Stokingers are entitled to probe Armslist's limited disclosure of its New Hampshire ties, such as its carefully phrased affidavit with qualifiers like "to the best of my knowledge" and "Armslist did not *actively* recruit" Premium Vendors or Private Parties in New Hampshire (emphasis added)). JA87–94. Elsewhere, Armslist states that none of its third-party advertisers were located in New Hampshire "in January 2016," JA93 ¶ 50, but not does not address any other

---

[11] Armslist notes that the Stokingers deposed certain third-party witnesses and did not depose others. Armslist Br. at 42–43. However, no Armslist employee or representative was deposed, and so the Stokingers never had the opportunity to probe Armslist's ties to New Hampshire based on someone with relevant knowledge of the company's practices.

time. Similarly, the Stokingers are entitled to probe Armslist's statement in the Massachusetts Action that it had no documents responsive to certain limited requests concerning sellers located in or offering sales in New Hampshire. JA158–79. Those denials were not directly relevant to the Massachusetts Action but are relevant here. For example, it is implausible to suggest that Armslist has no documents or information relevant to its ties to New Hampshire despite having over 16,000 listings from the state on its website in 2021. JA246–48.

Finally, Armslist's misleadingly asserts that it "had already disclosed its revenue sources," which included income from "Third-Party Advertisers." Armslist Br. at 43. But Armslist did not disclose which advertisers were located within New Hampshire or how much revenue advertising Armslist derived from visitors based in New Hampshire.

There is a reason the discovery process is an adversarial one. The Stokingers must not be forced to rely on Armslist's voluntary disclosure of self-selected facts, but should be permitted to engage in narrow, targeted discovery.

## **CONCLUSION**

For the foregoing reasons, Plaintiffs-Appellants Kurt Stokinger and Janella Stokinger respectfully request that this Court reverse the district court's order and judgment granting the motion to dismiss for lack of personal jurisdiction. Even if the

Court does not so order, it should rule that the district court also erred in denying the

Stokingers' request for jurisdictional discovery.

Dated: November 13, 2024       Respectfully submitted,

**BLANK ROME LLP**

By: */s/ John D. Kimball* _____

John D. Kimball, Esq.
Robyn L. Michaelson, Esq.
Reena Jain, Esq.
Alexander D. Newman, Esq.
1271 Avenue of the Americas
New York, NY 10020
(212) 885-5000
john.kimball@blankrome.com
robyn.michaelson@blankrome.com
reena.jain@blankrome.com
alexander.newman@blankrome.com

**MCDOWELL & MORRISSETTE, P.A.**

Mark D. Morrissette, Esq.
Brian J. Stankiewicz, Esq.
282 River Road
Manchester, NH 03105
(603) 623-9300
mmorrissette@mcdowell-morrissette.com
bstankiewicz@mcdowell-morrissette.com

**BRADY CENTER TO PREVENT GUN VIOLENCE**

Douglas N. Letter, Esq.
840 First Street NE, Suite 400
Washington, DC 20005
(202) 370-8100
dletter@bradyunited.org

*Counsel for Plaintiffs-Appellants Kurt Stokinger and Janella Stokinger*

## <u>CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT, TYPEFACE REQUIREMENTS, AND TYPE-STYLE REQUIREMENTS</u>

1.      This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B)(ii) because, excluding the part of the document exempted by Federal Rule of Appellate Procedure 32(f), this brief contains no more than 6,500 words. This document contains 5,129 words.

2.      This document complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word 365 in 14-point Times New Roman font.

Dated: November 13, 2024                    */s/ John D. Kimball*
                                                                John D. Kimball

                                                                *Counsel for Plaintiffs-Appellants Kurt Stokinger and Janella Stokinger*

24

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on November 13, 2024, I electronically filed the foregoing document with the United States Court of Appeals for the First Circuit by using the CM/ECF system, which electronically served a copy on all counsel of record.


Dated: November 13, 2024                          */s/ John D. Kimball*_____
                                                                    John D. Kimball